STROHEIM et al. v. DEIMEL et al.

(Circuit Court, N. D. Illinois. April 16, 1896.)

EXECUTION—IMPRISONMENT FOR DEBT—STATE RESTRICTIONS ON FEDERAL PRO-
	CESS.

> Rev. St. Ill. 1895, c. 72, §§ 30, 31, which provide that creditors who have
> caused their debtors to be imprisoned upon writs of ca. resp. or ca. sa.
> must pay their board weekly in advance, or the debtors will be discharged,
> is a restriction on imprisonment for debt, within the meaning of Rev. St.
> U. S. § 990, which declares that "all modifications, conditions and restric-
> tions upon imprisonment for debt, provided by the laws of any state, shall
> be applicable to the process issuing from the courts of the United States
> to be executed therein."

At Law. On motion. Action on the case by Julius Stroheim
and others against Joseph and Rudolph Deimel. Plaintiffs ob-
tained judgment, and obtained an execution against defendants'
bodies, under which the latter were arrested and imprisoned. De-
fendant Rudolph Deimel now moves to be discharged from imprison-
ment.

Moran, Kraus & Mayer, for plaintiffs.
Duncan & Gilbert, for petitioner.

SHOWALTER, Circuit Judge. This was an action on the case,
for alleged false representations for the purpose of obtaining goods
on credit. On July 23, 1894, judgment was rendered against de-
fendants for $8,500 and costs. On the 17th of November, 1894, a
writ of capias ad satisfaciendum was sued out by the plaintiffs, on
said judgment. The two defendants having been thereafter ar-
rested by the marshal, pursuant to said writ, a motion was made
on their behalf to quash the same, as having been illegally and im-
providently issued. This motion was based on the following statute
enacted in 1893 by the legislature of Illinois:

> "No person shall be imprisoned for non-payment of a fine or judgment in
> any civil, criminal, quasi criminal or qui tam action, except upon conviction
> by a jury: provided, that the defendant or defendants in any such action may
> waive a jury trial by executing a formal waiver in writing: and provided
> further, that this provision shall not be construed to apply to fines inflicted
> for contempt of court; and provided further, that when such waiver of jury
> is made, imprisonment may follow judgment of the court without conviction
> by a jury." Laws 1893, p. 96.

There had been filed in the case a stipulation, in writing, waiving
a jury. But this paper was subscribed by the counsel for the parties.
It contained also a provision for trial before one of the district
judges, whereas a trial was afterwards had, and the finding upon
which final judgment went was made, by another of the district
judges. Before the latter was also heard the motion to quash, as
already mentioned. What manner of stipulation was in fact made,
waiving the jury, on the trial actually had, has been a subject of
controversy between the parties. Section 914 of the Revised Stat-
utes of the United States is in words following:

> "The practice, pleadings, and forms and modes of proceeding in civil causes,
> other than equity and admiralty causes, in the circuit and district courts,
> shall conform, as near as may be, to the practice, pleadings, and forms and

modes of proceeding existing at the time in like causes in the courts of record of the state within which such circuit or district courts are held, any rule of court to the contrary notwithstanding."

A judgment for plaintiff in a case like this is a recital, of record, that the plaintiff do recover from the defendant so much money, and that he have execution therefor. Under the state law an execution against the body is comprehended in this recital. The state statute in question narrows the scope of such a judgment, if it be rendered on the finding of the judge, instead of on the verdict of a jury, when the waiver of the jury is not "a formal waiver in writing" executed by "the defendant or defendants." In the one case the judgment means one thing; in the other, another. In the one case the plaintiff has the right to take in execution the body of the defendant; in the other, he has not that right. The state enactment, in other words,—assuming it to be a valid enactment,—has for its subject-matter the rights of the litigants as between each other, and not any form of practice, pleading, or procedure, within the sense of section 914 above quoted. From another point of view, the state statute is apparently a limitation upon the judicial power of the state judge. That is to say, the judgment rendered by him upon his finding is narrowed by the statute from what it would be if rendered on the verdict of a jury. And, still further, section 649 of the Revised Statutes of the United States provides that the finding of the judge, where a written stipulation waiving a jury is filed, shall have the same effect as the verdict of a jury. For these reasons the state statute above quoted could not apply to the federal courts, nor could said statute become effective by section 914 of the federal statutes.

Nor, again, is the state statute a modification, condition, or restriction on imprisonment for debt, within the sense of section 990 of the Revised Statutes, which section is in words following:

"No person shall be imprisoned for debt in any state, on process issuing from a court of the United States, where, by the laws of such state, imprisonment for debt has been or shall be abolished. And all modifications, conditions, and restrictions upon imprisonment for debt, provided by the laws of any state, shall be applicable to the process issuing from the courts of the United States to be executed therein; and the same course of proceedings shall be adopted therein as may be adopted in the courts of such state."

This section, so far as it concerns any restriction on imprisonment for debt, has reference to what may be done on "process issuing from a court of the United States." The state enactment already quoted is, indeed, a modification, condition, or restriction "upon imprisonment for debt," but not a modification, condition, or restriction which, in the nature of things, can be "applicable to the process issuing from the courts of the United States," or to the process issuing from any court. The right to have the process is one thing; a restriction on what may take place under it is another.

The learned district judge overruled the motion to quash, and, on writ of error from the court of appeals, that order was affirmed. I am not here necessarily concerned with the line of thought on the question which led to the judgment of either court. I make the foregoing suggestions as pertinent to the inquiry now in hand and to be developed in the course of this opinion.

On the 13th day of March, 1896, Rudolph Deimel, who had been at large on bail pending the proceeding in the court of appeals, surrendered himself to the marshal. On the 14th of March he was taken to the jail in Will county, where he has since been imprisoned, pursuant to the said capias ad satisfaciendum. After notice from the marshal the plaintiffs in execution caused to be paid to him, on said 13th day of March, the sum of $3.50, for the board of said prisoner for the next succeeding week. From the 13th to the 26th of March, no further advance of money was made by plaintiffs, or any one in their behalf, either to the marshal or the jailer. Said Rudolph Deimel now comes, by his counsel, and moves that he be released from said imprisonment, grounding his application on sections 30 and 31 of chapter 72 of the Revised Statutes of Illinois. Said sections are in words following:

"Sec. 30. In all cases where any person is committed to the jail of any county upon any writ of capias ad respondendum or capias ad satisfaciendum issued in any suit, it shall be the duty of the creditor in such writ to pay the keeper of the jail or sheriff his fees for receiving such person, and his board for one week at the time the debtor is committed to jail and before the jailer shall be bound to receive the debtor, and in default of such payment, the debtor may be discharged: provided, the officer having such debtor in charge shall give reasonable notice to the creditor or his agent or attorney, if within the county, that such debtor is about to be committed to jail on such writ.

"Sec. 31. Should the debtor be detained in jail under such writ for more than one week, it shall be the duty of the creditor, at the commencement of each week, to advance to such jailer the board of the debtor for the succeeding week, and in default of such payment in advance, the debtor may be discharged by such jailer. In case the debtor shall not be detained in such jail for any week for which his board may have been paid in advance, the jailer shall return to the creditor, or his agent or attorney, the amount so advanced for and unexhausted in boarding."

These enactments, by their terms, seem to apply to a debtor held on a capias ad satisfaciendum issued as of course on a judgment for a tort, as well as to one held on the like writ ordered after the return of a fieri facias, and on a showing by affidavit that such debtor has concealed his property to prevent a levy. But Lambert v. Wiltshire, 144 Ill. 517, 33 N. E. 538, in which the opinion was by Judge Scholfield, and Hanchett v. Weber, 17 Ill. App. 114, in which the opinion was by Judge McAllister, are clear upon the point.

It is urged that said sections are for the benefit, not of the debtor, but of the jailer. In Manby v. Scott, 1 Mod. 132, Justice Hyde said:

"If a person be taken in execution to lie in prison for debt, he is not to be provided with meat, drink, or clothes, but he must live on his own, or the charity of others; and, if no man will relieve him, let him die in the name of God, says the law, and so say I."

By section 16 of chapter 75 of the Revised Statutes of Illinois, it is provided that:

"The keeper of the jail shall furnish each prisoner daily with as much clean water as may be necessary for drink and personal cleanliness, and serve him three times a day with wholesome food, well cooked, and in sufficient quantity."

By section 24, "the cost * * * of maintaining the prisoners" in the jail, "except as otherwise provided by law," is to be paid by

the county. But, as to a prisoner for debt, it is provided by law that the plaintiff in execution—the person interested in the detention—shall pay his board on the first day of each week. Otherwise, the prisoner is to be discharged. The jailer is not, nor is the state or county, interested. Moreover, the requirement of payment on the first day of each week is needlessly specific, as a mere provision for the jailer. And, again, the two cases already cited imply that these enactments are in fact a limitation on the right of plaintiff in execution to hold the body of his debtor. Such is the understanding, also, among the judges who preside over the state court of original jurisdiction. See, for instance, the opinion of Collins, J., in the case of People v. McHugh, 19 Chi. Leg. News, 177.

Rudolph Deimel was taken under the writ on the 20th of November, 1894. How long his imprisonment continued does not appear, from the affidavits; but certainly for a portion of a week. It is said that $3.50 was then paid for a week's board, and that the balance thereof has not been returned. It further appears that on the 26th of March, 1896, a sum was either tendered or paid to the marshal, sufficient in amount to cover the board for the then current week. It is certain, however, that nothing was paid on the first day of the second week of the present imprisonment, and that, if the old balance could be so applied, it was less than $3.50, which is the amount exacted by the jailer for a week's board for an imprisoned debtor. Upon the construction given by the state judges in the courts of original jurisdiction (see the opinion of Judge Collins, already referred to), this petitioner would be discharged, if this proceeding had been in the circuit or superior court of Cook county. It is said that the supreme court of Illinois has not passed on the question, and that, upon such facts as are shown here, an imprisoned debtor is not, under the state law, entitled to his discharge. But the ruling in the state courts is nothing more than a strict construction in a case where personal liberty is involved. It is grounded on English precedents under the lords' act, such as Anon., Sayer, at page 102; Fisher v. Bull, 5 Term R. 36; Rex v. Wilkinson, 7 Term R. 156,—and on the rules as laid down in 1 Tidd, Prac. at page 382.

It is again contended that under the state law a judgment debtor taken on a capias ad satisfaciendum, issued as of course on a judgment for a tort, cannot be discharged without having first scheduled his property as provided in chapter 72 of the Illinois Statutes. Sections 62 and 65 of chapter 77, being the chapter on "Judgments," are in words following:

"Sec. 62. If, upon the return of an execution unsatisfied, in whole or in part, the judgment creditor, or his agent or attorney, shall make an affidavit stating that demand has been made upon the debtor for the surrender of his estate, goods, chattels, land and tenements, for the satisfaction of such execution, and that he verily believes such debtor has estate, goods, chattels, lands or tenements, not exempt from execution, which he unjustly refuses to surrender, or that since the debt was contracted, or the cause of action accrued, the debtor has fraudulently conveyed, concealed or otherwise disposed of some part of his estate, with the design to secure the same to his own use, or defraud his creditors; and also setting forth upon his knowledge, information and belief, in either case, the facts tending to show that such belief is well founded, and shall procure the order of the judge of the court from

*which* the execution issued, *or of any judge or master in chancery* in the same county, certifying that probable cause is shown in such affidavit to authorize the issuing of an execution against the body of the debtor, and ordering that such writ be issued; upon the filing of such affidavit and order with the clerk, he shall issue an execution against the body of such judgment debtor."

"Sec. 65. When a debtor shall be arrested by virtue of an execution against his body, he shall be conveyed to the county jail of the county of the officer who made the arrest, and kept in safe custody until he shall satisfy the execution or be discharged according to law. Immediately upon the arrest of the defendant the officer making the same shall give notice thereof to the plaintiff, his agent or attorney, if in the county: provided, that no person heretofore or hereafter imprisoned under the provisions of this act, shall be imprisoned for a longer period than six months from the date of arrest. And all persons imprisoned under the provisions of this act, for the period of one or more years at the time this act takes effect shall thereupon be immediately discharged: provided, however, that no person shall be released from imprisonment under this act who neglects or refuses to schedule in manner and form as provided by 'an act concerning insolvent debtors,' approved April 10, 1872, in force July 1, 1872. As amended by act approved June 17, 1887. In force July 1, 1887."

Section 34 of chapter 72, being the insolvent debtor act referred to, is in words following:

"In any case where the defendant arrested upon final process shall not be entitled to relief under the provisions of this act, if the plaintiff will advance the jail fees and board in manner hereinbefore provided, the defendant may be imprisoned at $1.50 per day until the judgment shall be satisfied, and the officer making the arrest shall endorse the execution 'Satisfied in full by imprisonment'; provided, that no person heretofore or hereafter imprisoned under the provisions of this act, shall be imprisoned for a longer period than six months from the date of arrest; and all persons imprisoned under the provisions of this act, for the period of six months or more, at the time this act takes effect, shall thereupon be immediately discharged: provided, however, that no person shall be released from imprisonment under this act who neglects or refuses to schedule in manner and form as provided by this act."

If, after a return of a fieri facias unsatisfied, the debtor should be taken on a capias ad satisfaciendum ordered pursuant to section 62, above quoted, he may, if he so elects, pursuant to section 3 of chapter 72, have a hearing before the county judge upon the issue whether or not he has concealed his property. Upon a finding against him, he is remanded. But he may then, as an insolvent debtor, be required by the court to schedule and assign his property, or he may, doubtless, voluntarily avail himself of the divers provisions in the act concerning that class of persons. If, as an insolvent debtor, he makes a proper schedule of, and duly assigns, his property, pursuant to sections 6–11, he may still be discharged from imprisonment, notwithstanding the previous adverse finding already spoken of. But it cannot be said that an imprisoned debtor "neglects and refuses to schedule in manner and form, as provided by" chapter 72, unless he has been ordered to schedule, or unless there be some provision of that act which requires or authorizes him so to do. Sections 2–11 of chapter 72 have no application to a prisoner taken on a capias ad satisfaciendum issued as of course on a judgment for a tort. Such a prisoner cannot be released by scheduling. There is no law authorizing him to schedule, in the county court or elsewhere, as a means of being discharged from

imprisonment,—no law authorizing any judicial officer to entertain or pass on any schedule tendered by him. While he remains in prison the debt is abated at the rate of $1.50 a day. If he be discharged, the balance of the debt remains. A fieri facias may issue, and if, upon the return of such a writ unsatisfied, the proper showing be made, under section 62, above quoted, I see no reason why a capias ad satisfaciendum may not again issue; and in that case, I take it, the provisions of chapter 72 would be applicable. But, however this may be, in no event, under the state law, can a schedule be a condition precedent to the release of an imprisoned debtor held by a capias issued as of course on a judgment like the one in the case at bar.

It is insisted, with much apparent confidence, that the state enactments upon which this application is grounded have no force in a court of the United States. Sections 4–6 of chapter 75 of the Revised Statutes of Illinois are in words following:

"Sec. 4. The keeper of the jail shall receive and confine in such jail, until discharged by due course of law, all persons who shall be committed to such jail by any competent authority.

"Sec. 5. The provisions of the preceding section shall extend to persons detained or committed by authority of the United States, as well as of this state.

"Sec. 6. The keeper of the jail shall be liable, for failing to receive and safely keep all persons delivered under the authority of the United States, to like pains and penalties as for similar failures in the case of persons committed under the authority of this state: provided, always, the marshal or person delivering such prisoner shall pay, or cause to be paid, for the use and keeping of such jail, at the rate of 50 cents per month, for each person that shall, under their authority, be committed therein, and also to the jailer such fees as he would be entitled to for like services rendered, in virtue of the existing laws of this state, during the time such prisoner shall be therein confined, and moreover shall support such of the said prisoners as shall be committed for offenses."

It is by virtue of these enactments—made, it is said, in the brief for plaintiffs in execution, in response to the resolution of 1798 of the congress of the United States—that this petitioner was confined in the Will county jail. No law or regulation is pointed out whereby the United States or the marshal has undertaken to pay the board of a prisoner for debt. If the provision of the state law that the plaintiff shall pay the board of the prisoner taken by him in execution be not the law of the United States, then such prisoner, it would seem, must depend on himself, or on charity, to avoid starvation. Section 990 has already been quoted in full. It declares that "all modifications, conditions and restrictions upon imprisonment for debt, provided by the laws of any state, shall be applicable to the process issuing from the courts of the United States to be executed therein." Shall I say that, within these terms, sections 30 and 31 of chapter 72 of the Revised Statutes of Illinois, in form and effect, and as construed by the courts of Illinois, are a restriction upon imprisonment for debt, and that such restriction is applicable to the imprisonment of this prisoner? By these enactments a capias ad satisfaciendum, issued as of course on a judgment in an action ex delicto in a state court, can hold the prisoner no longer than

the plaintiff makes the payments called for. Said state laws are, in such a case, a restriction "upon imprisonment for debt"; and, as such restriction, they have application "to the process issuing from the courts of the" state. Such a restriction would seem, prima facie, and by the express terms of section 990, applicable "to the [like] process issuing from the courts of the United States."

But it is contended that section 990 does not apply to the imprisonment of a defendant on a capias ad satisfaciendum issued as of course on a judgment in an action ex delicto. Is not such a defendant taken on execution for a debt? Is not such a judgment a debt? How is the imprisonment to be characterized, in such a case, if it be not imprisonment for debt? Section 1042 of the Revised Statutes of the United States is in words following:

"When a poor convict, sentenced by any court of the United States to pay a fine, or fine and cost, whether with or without imprisonment has been confined in prison thirty days, solely for the non-payment of such fine, or fine and cost, he may make application in writing to any commissioner of the United States court in the district where he is imprisoned, setting forth his inability to pay such fine, or fine and cost, and after notice to the district attorney of the United States, who may appear, offer evidence, and be heard, the commissioner shall proceed to hear and determine the matter; and if on examination it shall appear to him, that such convict is unable to pay such fine or fine and cost, and that he has not any property exceeding $20 in value, except such as is by law exempt from being taken on execution for debt, the commissioner shall administer to him the following oath: 'I do solemnly swear that I have not any property, real or personal, to the amount of $20, except such as is by law exempt from being taken on civil precept for debt by the laws of (state where oath is administered); and that I have no property in any way conveyed or concealed; or in any way disposed of for my future use or benefit. So help me God.' And thereupon such convict shall be discharged, the commissioner giving to the jailer or keeper of the jail a certificate setting forth the facts."

Shall I disregard the plain and ordinary meaning of the words of section 990, and hold that the imprisonment of a defendant on execution for a judgment in tort is not imprisonment for debt, within the meaning and intent of that section; and this in order to reach the conclusion that while, by the law of the United States, a convict or offender against the government, imprisoned for nonpayment of a fine, cannot be held longer than 30 days, yet a judgment debtor may, at the pleasure of his creditor, be held a prisoner for life, and be dependent on charity for subsistence while he does live?

It is said that the opinion of the court of appeals on the motion to quash contains a dictum to the effect that section 990 does not refer to imprisonment on judgments ex delicto. For reasons given in this opinion, I doubt if the point were material to the decision in the court of appeals. The question there was whether the writ itself was authorized by law. The dictum was not, and was evidently not intended to be, anything more than a reiteration of the rule that, in a constitutional provision abolishing imprisonment for debt, the word "debt" does not necessarily comprehend, and ought not to be construed as comprehending, a judgment in tort. But where a defendant has been taken in execution on such a judgment, and the question arises on the application to his case of section 990, as comprehending such statutory provisions as sections 30 and 31 of chapter

72 of the Revised Statutes of Illinois, the construction favorable to personal liberty must be applied to the words "imprisonment for debt." He is in fact "imprisoned for debt," within the fair scope of these words. Moreover, in Illinois his imprisonment satisfies the debt at the rate of $1.50 a day. For the purposes of the question here presented, I must read section 990 of the Revised Statutes of the United States in connection with section 1042, and in the light of the rule of construction last referred to. The right of a creditor to take on execution the body of his debtor is in the nature of a property right. This right a statute or constitutional enactment abolishing "imprisonment for debt," in effect, takes from the creditor. Such a statute therefore contains no more than is expressed by, and necessarily included in, its terms. So construed, it cannot take from a plaintiff in tort the right to seize the defendant on execution; for the claim sued on gives character to the case, and that claim is not a debt. The contrary rule of construction, namely, that the statute contains everything fairly within the language used, and not necessarily excluded therefrom, prevails when the legislative intent is obviously a relief or benefit to a debtor already imprisoned. The words in section 990, "all modifications, conditions and restrictions upon imprisonment for debt, provided by the laws of any state, shall be applicable to process issuing from the courts of the United States," especially when read in connection with section 1042, above quoted, imply relief or benefit to judgment debtors held on execution by writs from the federal courts. The words, "imprisonment for debt," as used in section 990, may, and therefore must, include the imprisonment of a judgment debtor on execution in an action ex delicto.

My holding is that the requirement for the payment by plaintiffs of the debtor's board on the first day of each week of his detention is not, in Illinois, a municipal regulation for the guidance of state officials, within the sense of McNutt v. Bland, 2 How. 1; that said requirement is a limitation on the plaintiffs' right to detain the debtor,—in other words, a restriction on imprisonment for debt; that such restriction is within the terms of section 990 of the Revised Statutes of the United States; and that, by reason of the failure to pay on the first day of the second week of petitioner's imprisonment, plaintiffs lost their right to further detain this petitioner pursuant to the capias ad satisfaciendum under which he is imprisoned.

At common law, I suppose the appropriate proceeding here would have been by audita querela. But since no objection is interposed to the form of this application, and since the plaintiffs in execution elected to present the showing of fact from their side by affidavit, and since no occasion for a jury has arisen, there being really no dispute of fact, an order discharging this petitioner may be properly made on this application.