Warehouse & Builders Supply Co. vs. Galvin and others.

WAREHOUSE & BUILDERS SUPPLY COMPANY, Respondent, vs.
GALVIN and others, Appellants.

*May 25 — June 11, 1897.*

*Jurisdiction of state and federal courts: Admiralty: Liens: Common
carriers: Entire contract: Replevin.*

1. The owner of a vessel, as a common carrier, has at common law a
   particular and specific lien for his freight upon goods carried,
   which may be enforced in a state court.

2. An action of replevin, brought by the owner and consignee of goods
   shipped by water to recover possession thereof from the owner of
   the vessel and those claiming under him, who claimed a lien
   thereon growing out of the contract of carriage, is a proceeding
   to enforce a common-law remedy, and not a proceeding in admi-
   ralty. The state courts were not therefore deprived of jurisdic-
   tion over the action by sec. 2, art. III, Const. of U. S., or by subd. 8,
   sec. 563, R. S. of U. S., vesting exclusive admiralty and maritime
   jurisdiction in the federal courts, but expressly saving to suitors
   the right of a common-law remedy where the common law is com-
   petent to give it.

3. A contract to carry 5,000 bushels of salt between certain points at
   ten cents per barrel is an entire contract, and if only a part of that
   amount is actually delivered for carriage, the carrier is entitled to
   a lien thereon, at the end of the transit, for the entire contract
   price.

4. Where a shipper fails to deliver to a vessel the full amount of goods
   which he has contracted to furnish, the lien of the vessel upon the
   goods delivered is enforceable in admiralty, whether the action be
   regarded as one to recover freight or for damages for the nonper-
   formance of a contract.

5. Where a person has a lien upon goods which would be enforced by
   the federal courts as courts of admiralty, the owner of the goods
   cannot recover them in an action of replevin brought in the state
   courts.

APPEAL from a judgment of the superior court of Douglas
county: CHAS. SMITH, Judge. *Reversed.*

This action of replevin was commenced June 21, 1895, to
recover possession of 415 barrels and 607 sacks of salt, in all

equivalent to 818 barrels, of the admitted value of $600, by the plaintiff, a wharfinger and warehouseman, and owner of the salt, at West Superior, against the defendants *Rooney* and *Beardsley*, copartners doing business under the firm name of the Superior Warehouse Company, and as such operating a warehouse at that place, and also against the defendants *Galvin, Donnacher*, and *Tyler*, owners of the steamer Saginaw Valley, and engaged in operating the same, and *W. E. Clark* and *H. B. Erhart*, as master and agent of the same vessel.

The cause being at issue, and trial having been had by the court (a trial by jury having been expressly waived), at the close thereof the court found as matters of fact, in effect, the facts stated, and also that June 10, 1895, the Saginaw Valley left Buffalo, New York, for West Superior; that before leaving Buffalo the plaintiff entered into a contract with the owners of the Saginaw Valley, by the terms of which the Saginaw Valley was to transport 5,000 barrels of salt for the plaintiff from Marine City and St. Clair, Michigan, to the plaintiff's dock at West Superior, at the agreed price of ten cents a barrel, the plaintiff to load and unload the same, or to pay the cost of loading and unloading the salt thereon; that the vessel reserved space for 5,000 barrels, and had the same reserved when at Marine City and St. Clair, June 14, 1895; that when the vessel arrived at Marine City and St. Clair the plaintiff only furnished for transportation barrels and sacks equivalent to 818 barrels, as mentioned, leaving a shortage of 4,182 barrels of salt, which the plaintiff had so agreed to furnish; that the defendants made diligent effort to obtain a sufficient cargo to fill the place of the 4,182 barrels of salt so short, but were obliged to make the voyage without any additional cargo; that June 19, 1895, the Saginaw Valley reached the plaintiff's dock at West Superior with said cargo, and notified the plaintiff of the arrival; that by reason of such failure of the

plaintiff to furnish said additional 4,182 barrels of salt the owners of the Saginaw Valley were damaged in the sum of $418.20; that upon so reaching the plaintiff's dock the defendants *Clark* and *Erhart*, as such master and agent, demanded pay of the plaintiff for the damages so sustained, and refused to deliver the salt then on board unless the plaintiff would pay such damages; that the plaintiff then refused to pay such damages, or to receive the salt subject to charges for such damages, but offered to pay and tendered payment for transporting 818 barrels, so then on board, at the rate of ten cents per barrel, and, in addition, to pay the handling charges, but the defendant refused to accept the offer; that thereupon the vessel left the plaintiff's dock, and proceeded to the dock of the Superior Warehouse Company, and unloaded the same in their warehouse, under instructions from the master not to deliver the same to the plaintiff, except upon the order of *Erhart;* that June 20, 1895, *Erhart* gave the plaintiff an order upon the Superior Warehouse Company, to deliver to the plaintiff the salt so on board, but before the same was acted upon *Erhart* countermanded the order, and directed the Superior Warehouse Company not to deliver the salt to the plaintiff; that the plaintiff then duly demanded the salt from the defendants, and upon their refusal to deliver the same commenced this action, and replevied the salt, and delivered the same to the plaintiff, who still had the possession thereof, and that the value thereof was $600; that the charges of the Superior Warehouse Company for receiving and storing the salt since the commencement of this action were $61, which had been paid by the owners of the vessel; that the Saginaw Valley was delayed one day at Marine City and St. Clair by reason of the plaintiff's failure to furnish the 4,182 barrels of salt mentioned, but the defendants made no claim to the plaintiff at the time for demurrage for such delay, nor did they set up any specific claim for demurrage in their answer, but

did claim the same on the trial under the general denial, but the proof thereof was rejected by the court; that the plaintiff's damages for such detention of the salt were six cents, and the charges for transporting 818 barrels were $81.80, and the cost of unloading was $12; that the Saginaw Valley so received the salt from the Michigan Salt Works, from which the plaintiff had purchased the same and was the owner thereof. .

As conclusions of law, the court found, in effect, that the plaintiff was entitled to judgment against all of the defendants for the possession of the salt so replevied; and a judgment against all the defendants for six cents damages and the costs and disbursements in this action, to be taxed, and ordered judgment accordingly. From the judgment so entered thereon the defendants appeal.

For the appellants there was a brief by *H. H. Grace* and *H. R. Spencer*, and oral argument by *Mr. Grace*.

For the respondent the cause was submitted on the brief of *Frederick H. Remington*. He contended, *inter alia*, that it is established that the shipowner has no lien upon the goods shipped for the freight upon those not shipped, but is left to an action for damages. *Phillips v. Rodie*, 15 East, 547; *Birley v. Gladstone*, 3 Maule & S. 205; *Gray v. Carr*, L. R. 6 Q. B. 522. The carrier's lien is a particular or specific lien attaching only to the specific goods in his possession, and in general only secures the unpaid price of carriage of those specific goods. 1 Jones, Liens, §§ 265–281; *Crommelin v. N. Y. & H. R. Co.* 4 Keyes, 90; *Leonard's Ex'rs v. Winslow*, 2 Grant (Pa.), 139; *Hartshorne v. Johnson*, 7 N. J. Law, 108; *Butler v. Woolcott*, 2 Bos. & P. N. R. 64; 8 Am. & Eng. Ency. of Law, 975. The state court had jurisdiction. *Crawford v. Roberts*, 50 Cal. 235; *Southern Dry Dock Co. v. The J. D. Perry*, 23 La. Ann. 39; *Leon v. Galceran*, 11 Wall. 185; *Rake v. The Potomac*, 6 Bush, 25; *Parisot v. Helm*, 52 Miss. 617; *Bohannan v. Ham-*

*mond*, 42 Cal. 227; *Home Ins. Co. v. N. W. P. Co.* 32 Iowa, 223; *Baird v. Daly*, 57 N. Y. 237; *Steamboat Co. v. Chase*, 16 Wall. 522; *Sherlock v. Alling*, 93 U. S. 99; *Dougan v. Champlain Transp. Co.* 56 N. Y. 1; *Stewart v. Harry*, 3 Bush, 438; *Percival v. Hickey*, 18 Johns. 257; *Chisholm v. Northern Transp. Co.* 61 Barb. 363; *Daily v. Doe*, 3 Fed. Rep. 903.

CASSODAY, C. J. It is claimed that the trial court had no jurisdiction of the subject matter of the action. This is put upon the ground that such jurisdiction is vested exclusively in the federal courts of admiralty and maritime jurisdiction. Sec. 2, art. III, Const. of U. S.; subd. 8, sec. 563, R. S. of U. S. In support of such contention counsel rely upon cases holding that upon an ordinary contract of affreightment the lien of the shipper is a maritime lien; and a proceeding *in rem* to enforce it is within the exclusive original cognizance of the district courts of the United States. *The Belfast*, 7 Wall. 624. But the statute giving to federal courts such exclusive jurisdiction " of all causes of admiralty and maritime jurisdiction," expressly saves " to suitors in all cases the right of a common-law remedy *where the common law is competent to give it.*" Sec. 563, *supra*. The same clauses are contained in the section of the federal statutes expressly making the jurisdiction vested in the federal courts in certain cases " exclusive of the courts of the several states." Subd. 3, sec. 711, R. S. of U. S. " The distinguishing and characteristic feature " of a suit in admiralty, to use the language of Mr. Justice FIELD, " is that the vessel or thing proceeded against is itself seized and impleaded as a defendant, and is judged and sentenced accordingly. It is this dominion of the suit in admiralty over the vessel or thing itself which gives to the title made under its decree validity against all the world. By the common-law process, whether of mesne attachment or execution, property is reached only through a personal

defendant, and then only to the extent of his title. Under a sale, therefore, upon a judgment in a common-law proceeding, the title acquired can never be better than that possessed by the personal defendant. It is his title, and not the property itself, which is sold." *The Moses Taylor*, 4 Wall. 427.

This is certainly not a suit in admiralty. On the contrary, it is an ordinary action of replevin, brought by the owner and consignee of the goods shipped against the owners of the boat transporting the same, and those claiming under them, to recover possession of the goods shipped. It is one of the common-law remedies saved to suitors, so far as the common law is competent to give such remedy. The court, therefore, had jurisdiction of the action, and could retain the same, so far as to determine the questions within its rightful jurisdiction.

The defendants, as common carriers, had a particular and specific lien at common law upon the goods so carried for their freight in carrying the same. 1 Jones, Liens, §§ 262, 263. The same author says: " Carriers by water have a lien as well as carriers by land. A shipowner has a lien for freight upon the goods carried, whether the vessels be chartered or be general ships carrying goods for all persons for hire. The master is not bound to deliver possession of any part of his cargo until the freight and other charges due in respect to such part are paid. This lien may be regarded as a maritime lien, because it is cognizable in the admiralty, and under the usages of commerce arises independently of the agreement of the parties. The shipowner may retain the goods until the freight is paid, or he may enforce it by a proceeding *in rem* in the admiralty court; but, although the lien is maritime and cognizable in the admiralty, it stands upon the same ground with the common-law lien of the carrier on land, is subject to the same principles, *except as regards enforcement*, and may, therefore, be considered

in connection with the liens of carriers by land." Id. §§ 270, 271. See, also, Hutchinson, Carriers, §§ 476–479. The court, therefore, had jurisdiction to determine the amount of such lien for carriage at common law, and whether the amount of freight tendered by the plaintiff was sufficient to discharge the same.

True, the statutes of this state provide, among other things, in effect, that every ship, boat, or vessel used in navigating the waters of this state shall be liable to a lien thereon (3) for all demands or damages accruing from the nonperformance or malperformance of any contract of affreightment, or any contract touching the transportation of property entered into by the master, agent, owner, or consignee of the ship, boat, or vessel on which such contract is to be performed; such lien " to be enforced by proceedings in admiralty," or in the cases therein mentioned as therein prescribed,— that is to say, by attachment. Secs. 3348, 3351, S. & B. Ann. Stats. But the plaintiff is not here seeking to enforce any such lien against the boat, and hence the statutes give no support to this action.

The question recurs whether the owners of the vessel, and those acting under them, had the right to retain the possession of the 818 barrels of salt so carried until such owners had been paid, not only ten cents a barrel for each of the 818 barrels so carried, but also ten cents a barrel for each of the 4,182 barrels which the plaintiff failed to furnish for carriage as agreed. We are constrained to hold that the contract to carry the 5,000 barrels of salt at ten cents a barrel, was, in legal effect, an entire contract to carry the 5,000 barrels for $500. In other words, the contract was not divisible. This principle has often been applied by this court to a contract to work for a year, or some other definite time, at so much per month. *Jennings v. Lyons,* 39 Wis. 553; *Diefenback v. Stark,* 56 Wis. 462; *Koplitz v. Powell,* 56 Wis. 671. The reasons for the rule are sufficiently stated in these cases.

The principles upon which the rule is based are peculiarly applicable to a contract of affreightment, since the amount of the goods shipped is necessarily an inducement or consideration for making the contract. Such being the nature of the contract, it is manifest that the tender of freight by the plaintiff was insufficient, and hence that the plaintiff is not entitled to recover the possession of the salt in this action.

But, even if we were to take a different view of the contract, still we are inclined to hold that the plaintiff could not recover in this action. In this country it is firmly established in admiralty law that the vessel and the cargo have reciprocal rights against each other, and reciprocal liens to enforce the rights of each against the other. Parsons, Shipping & Adm. 171. Upon this principle it has been held by federal courts in this country, in effect, that, where a shipper fails to furnish or to deliver to the vessel the full amount of goods which he had contracted to furnish or deliver, the lien of the vessel upon the goods so furnished or delivered would be enforced in admiralty, whether the action be treated as one to recover freight or to recover damages for the nonperformance of a contract. *In re Nine Hundred and Forty-eight Pieces of Lumber,* 7 Ben. 389; *Fox v. Holt,* 4 Ben. 278; *The Eliza's Cargo,* 1 Lowell, 83; *Clarke v. Crabtree,* 2 Curt. 87; *The B. J. Willard,* 8 Weekly Notes Cas. 47; *Giles v. The Cynthia,* 1 Pet. Adm. 203, and note; *Watts v. Camors,* 115 U. S. 353; *The Gazelle and Cargo,* 128 U. S. 474. This principle includes demurrage. This lien of the vessel upon the cargo justified the owners of the vessel, and those acting under them, in retaining possession of the goods actually carried until such lien was satisfied or legally discharged; and it was incompetent for the state court to prevent the vessel from enforcing such lien in admiralty, or to deprive the owners of the vessel of such possession so long as such lien continued. *Stewart v. Potomac Ferry Co.* 12 Fed. Rep. 296. Counsel for the plaintiff has cited English

cases holding a different rule, but we feel bound by the decisions of our federal courts in admiralty cases.

*By the Court.*— The judgment of the superior court of Douglas county is reversed, and the cause is remanded with direction to dismiss the complaint.