JOHN MEUNIER GUN COMPANY, Respondent, vs. LEHIGH VALLEY TRANSPORTATION COMPANY, Appellant.

*October 19—November 15, 1904.*

*Default judgments: Failure of defendant to appear: Notice of application for judgment: Pleading: Admiralty: Jurisdiction of state courts: Contracts.*

1. Two days before the time for answering had expired, no notice of appearance or of retainer for defendant having been served, plaintiff's attorneys wrote defendant: "We are willing that the time for your appearance in the suit commenced against you, which expires on the 23d, should be extended for ten days, up to and including December 3d, on the assurance of your representatives that there is a probability of the matter being settled by that time, but we cannot consent to anything longer than that, and shall proceed with the lawsuit unless settled by that time." On December 7, plaintiff's complaint was verified, and, on proof of the default, after hearing the case, the court entered judgment for the plaintiff on December 8. *Held*, that not having appeared in the case, the defendant was not entitled to notice of the application for judgment.

2. In an action against a carrier on a contract of affreightment, for damages to goods consigned to plaintiff, the answer alleged that the goods were shipped by water under a bill of lading, wherein defendant was exempted from the perils of navigation, as well as by a general average bond, and that the damage was caused by the grounding of the vessel, and its becoming necessary to jettison and lighter the vessel, which was done. *Held*, that the pleading did not state a cause of action in admiralty jurisdiction, and therefore the state court had jurisdiction.

APPEAL from an order of the circuit court for Milwaukee county: ORREN T. WILLIAMS, Circuit Judge. *Affirmed.*

This is an appeal from an order entered January 16, 1904, refusing to vacate the judgment entered by default December 8, 1903, in favor of the plaintiff and against the defendant for $3,545.73. This action was commenced by the service of a summons on the defendant, a foreign corporation, by delivering the same to and leaving it with J. L. Kellogg

personally—the agent conducting the business of such corporation in this state—November 3, 1903. After some effort to settle the controversy, the plaintiff's attorneys wrote the defendant November 21, 1903, in which, among other things, they said:

"We are willing that the time for your appearance in the suit commenced against you, which expires on the 23d, should be extended for ten days, up to and including December 3rd, on the assurance of your representatives that there is a probability of the matter being settled by that time, but we cannot consent to anything longer than that, and shall proceed with the lawsuit unless settled by that time."

December 7, 1903, the plaintiff made its verified complaint, alleging, in effect, that during all the times therein mentioned the defendant was a common carrier of goods and passengers for hire, owning, running, and operating railway and boat lines for such carriage in Wisconsin, and from the city of New York to the city of Milwaukee; that April 18, 1903, the defendant received for the plaintiff, from the Winchester Repeating Arms Company, one certain car load of goods, described, to be by it transported from the city of New York to the city of Milwaukee, and the defendant promised and agreed to safely carry the same and deliver them to the plaintiff at Milwaukee in a good and proper condition, for which the plaintiff agreed to pay the agreed freight charges, amounting to $68 and over, and which sum was duly paid before the commencement of this action; that the defendant so received and accepted the goods to be so carried, and the defendant did not safely carry or deliver the goods as agreed, but so carelessly and negligently conveyed and cared for the same that a portion thereof were never delivered to the plaintiff, and were wholly lost, and the balance thereof were during such transportation so carelessly and negligently cared for and treated that they were greatly injured and damaged by water and cement coming upon such

goods, and greatly damaging them, and rendering them unfit
for the uses and purposes for which they were purchased, as
the defendant well knew—giving descriptions and value of
the articles in detail, and demanding judgment for $3,421.73,
with interest from June 29, 1903, with costs and disburse-
ments of this action.   December 7, 1903, one of the attor-
neys of the plaintiff made and filed an affidavit of default
to the effect that more than twenty days had elapsed since
the summons was served upon the defendant, and that no an-
swer or demurrer to the complaint and no notice of appear-
ance therein had been served upon the plaintiff's attorneys,
or received by them.   December 8, 1903, the trial court found
the defendant to be in default, and upon hearing the case de-
cided that the defendant was indebted to the plaintiff upon
the cause of action mentioned in the complaint in the sum of
$3,512.33, for which amount judgment was therein ordered
to be entered, with costs, and judgment was entered therein
accordingly on the same day, and written notice of the entry
and docketing of that judgment was given to the defendant
on the same day.   December 11, 1903, the defendant made
and served its verified petition to the trial court to vacate and
set aside the judgment and let the defendant file and serve
an answer, wherein was stated, in addition to the facts men-
tioned, that between the times of the commencement of the
action and the entry of judgment there were certain negotia-
tions for settlement, and an affidavit of merits, which peti-
tion was supported by affidavits relating to such loss and dam-
age and negotiations to settle the same, which affidavits were
in some respects controverted by affidavits on the part of the
plaintiff and certain letters and correspondence between the
plaintiff and defendant between June 29, 1903, and Novem-
ber 21, 1903.   December 24, 1903, the defendant made,
served, and filed its supplementary petition, accompanied by
numerous affidavits and a verified answer, in which it was
stated, in effect, in addition to admissions, that at all times

since May 23, 1903, it admitted its liability for certain goods of the plaintiff lost in transportation, and offered to pay them for such loss, subject to general average and insurance, and alleged that the goods were shipped in two lots—one by the steamer "Seneca," which arrived at Milwaukee May 22, 1903, and the other by the steamer "Wilbur," which arrived at Milwaukee May 30, 1903; that the goods were damaged as claimed; that such damage was caused solely by reason of the dangers and risks of navigation by the grounding of the vessel and its becoming necessary to jettison and lighter the vessel, which was done—all of which was assumed by the plaintiff by reason of the bill of lading made April 18, 1903, wherein it was stated that "marine risk on lakes insured at shipper's request and owner's expense," and also that "no carrier or party shall be liable for any loss or damage resulting from the perils of the lakes, sea or other waters," and the general average bond entered into by the parties May 25, 1903. Upon such showing the court refused to vacate and set aside the judgment and allow the defendant to defend, and that is the error complained of.

For the appellant there was a brief by *Markham, Hamilton & Markham,* attorneys, and *F. Herbert Janvier,* of counsel, and oral argument by *Talmage Hamilton.*

For the respondent there was a brief by *McElroy & Eschweiler,* and oral argument by *F. C. Eschweiler.*

CASSODAY, C. J.    It appears that negotiations and communications in respect to adjusting and settling the loss and damage complained of continued for more than four months prior to the commencement of this action. Eight days prior to the service of the summons the attorneys for the plaintiff informed the defendant, in writing, that they had been instructed by their client "that, unless something definite" should be "arrived at by the 1st day of November," they would "have to institute suit." The suit was commenced

November 3, 1903. November 21, 1903, and two days before the expiration of the time within which the defendant was required to appear in the case and answer, the plaintiff's attorneys, in response to something said on behalf of the defendant, wrote the letter, a portion of which is quoted in the foregoing statement. In that letter the defendant was plainly informed that the time for its "appearance in the suit" would expire two days thereafter, and that the same should be extended for ten days—up to and including December 3d— on the assurance of the defendant's representatives that there was a probability of the matter being settled by that time, but that they could not "consent to anything longer than that," and should *"proceed with the lawsuit unless settled by that time."* There could be no mistaking the language employed. Nevertheless, the defendant failed to appear in the case during the ten days mentioned, and did not appear in the case during the five days that followed prior to the entry of the judgment.

The rule of the circuit court provides:

"Service of notice of appearance or retainer generally, by an attorney for the defendant, shall in all cases be deemed an appearance." Circuit Court Rule VIII. See sec. 2643, Stats. 1898.

In the case at bar there was no appearance. In fact, the defendant employed no attorney to appear in the case until after the judgment was entered. Not having appeared in the case, the defendant was not entitled to any notice of the application for judgment. No attempt was made to excuse such default. There is no claim that the defendant failed to appear in the case through its "mistake, inadvertence, surprise, or excusable neglect;" much less that there was any abuse of discretion in refusing to relieve the defendant from such judgment in the absence of any such "mistake, inadvertence, surprise, or excusable neglect." Sec. 2832, Stats. 1898; *Boutin v. Catlin,* 101 Wis. 545, 77 N. W. 910.

Counsel for the defendant contend that the facts alleged in the proposed answer show that the action is based upon a contract of affreightment to be performed on the Great Lakes, with a general average adjustment, and hence are matters of admiralty jurisdiction, of which the state courts have no cognizance; citing sec. 2. art. III, Const. U. S. It is true that "upon an ordinary contract of affreightment the lien of the shipper is a maritime lien, and a proceeding *in rem* to enforce it is within the exclusive original cognizance" of courts of admiralty. *The Belfast,* 7 Wall. 624. "The distinguishing and characteristic feature of such suit" in admiralty, said Mr. Justice FIELD, speaking for the court, "is that the vessel or thing proceeded against is itself seized and impleaded as the defendant, and is judged and sentenced accordingly." *The Moses Taylor,* 4 Wall. 427. The statute of the United States giving to federal courts such exclusive jurisdiction expressly saves "to suitors in all cases the right of a common-law remedy where the common law is competent to give it." Subd. 8, sec. 563, R. S. U. S. [U. S. Comp. St. 1901, p. 457] ; *The Moses Taylor,* 4 Wall. 411, 427, 431; *The Belfast,* 7 Wall. 624, 643. These cases have been repeatedly followed by this court. *Warehouse & B. S. Co. v. Galvin,* 96 Wis. 523, 527, 71 N. W. 804; *Reynolds v. Nielson,* 116 Wis. 483, 485, 93 N. W. 455. It is a common practice for state courts to take jurisdiction and determine questions of general average. *Nimick v. Holmes,* 25 Pa. St. 366; *Nelson v. Belmont,* 21 N. Y. 36; *Libby v. Gage,* 14 Allen, 261; *Emery v. Huntington,* 109 Mass. 431. It is enough to say that neither the complaint nor the proposed answer states a cause of action in admiralty within the principles of the authorities cited.

*By the Court.*—The order of the circuit court is affirmed.