Argued July 6, reversed July 21, rehearing denied October 6, 1914.

## SEVIER v. MITCHELL.

(142 Pac. 780.)

**Carriers—Private Carriers—Liability.**

1. A private carrier of goods is governed by the law applicable to ordinary bailees.

**Carriers—Carriage of Goods—Remedies—Nature and Form.**

2. Where a tort has been committed with respect to property committed to a private carrier, the shipper may either bring an action for the tort or waive it and sue for a breach of the contract of bailment.

> [As to liability of bailee for misuser, see note in 12 Am. Dec. 619.]

**Carriers—Carriage of Goods—Actions—Pleading.**

3. A complaint, alleging that an agreement was entered into whereby the defendant, in consideration of $12.50, undertook to transport hogs, and that he would furnish a safe barge and deliver the hogs in proper condition, but failed to perform his agreement in that through his negligence part of the hogs were drowned, does not undertake to charge the defendant as an insurer, but as a bailee, and is sufficient.

[As to burden of proof of negligence on part of carrier of live-stock, see note in Ann. Cas. 1913E, 311.]

**Appeal and Error—Exceptions in Trial Court—Defect of Parties—Waiver.**

4. Where no exception was taken at the trial on the ground that the evidence showed that a person not a party to the action had an interest in the subject matter, the objection of want of the parties was waived.

**Parties—Plaintiffs—Persons Who must Sue.**

5. One employed to feed hogs under an agreement that he was to receive the value of one third of their increase in weight in excess of 125 pounds has no such interest in them as to render him a necessary party to an action for loss of the hogs in shipment.

**Shipping—Carriage of Animals—Limitation of Liability.**

6. In an action for the loss of hogs in shipment, it will be assumed, in the absence of evidence, that the scow used in transporting the hogs was of sufficient capacity to authorize the owner to interpose the defense afforded by Harter Act of February 13, 1893, Chapter 105, Section 3 (27 Stat. 445, U. S. Comp. Stats. 1901, p. 2946), providing that the owner of a vessel transporting property, exercising due diligence to make the vessel seaworthy and properly manned, equipped and supplied, shall not be liable for damages from faults or errors in navigation, nor from dangers of the sea or other navigable water, or the inherent defects, quality or vice of the thing carried, nor for loss from any act or omission of the shipper of the goods, his agent or representative.

**Courts—Concurrent Jurisdiction—Statutory Provisions.**

7. Under Judiciary Act of September 24, 1789, Chapter 20 (1 Stat. 76, § 9), giving state and federal courts concurrent jurisdiction of causes of action in admiralty, where only a common-law remedy *in personam* is sought, the right of plaintiffs to select the forum cannot prevent the defendant from setting up in the state court the defense of nonliability, in that the loss complained of arose from the dangers of navigation of a navigable stream.

**Shipping—Carriage of Animals—Liability of Carrier.**

8. In an action for the loss of hogs in shipment, where it was shown that the tug and tow encountered a high wind, producing a heavy swell in the Columbia River, and the vessel began to sink and was towed to the bank, where the stern settled, drowning 16 of the hogs, and a hole was discovered in the after rake above the usual water line, but defendant testified that when the voyage was commenced the scow was seaworthy, the finding of the court that the portions of defendant's answer with regard to the navigation of the scow and compliance with the laws of navigation and the evidence with regard thereto were immaterial, was error.

From Multnomah: FRANK M. CALKINS, Judge.

Department 1.    Statement by MR. JUSTICE MOORE.

This is an action by J. W. Sevier and O. E. Weed against D. Mitchell to recover damages for the loss of property while in transit.    The complaint charges in effect: That at all times stated therein the plaintiffs were and are partners.    That the defendant is the owner of the launch "Olympic," and engaged in towing for hire.    That about January 8, 1913, an agreement was entered into by the parties hereto whereby the defendant, in consideration of $12.50, thereafter to be paid, undertook to transport 71 hogs, then owned by and in the possession of the plaintiffs, from their farm near Linton, Multnomah County, Oregon, to the North Portland Stockyards in that county, and for that purpose he would furnish a safe and sound barge to be towed by the launch, and would deliver at the latter place the hogs in proper condition.    That the defendant failed to perform his part of the agreement, in that he delivered only 55 hogs, and because of his negligence 16 hogs were drowned, whereby plaintiffs were damaged in the sum of $266.34, for which judgment was demanded.

The answer denied the material averments of the complaint, and for a further defense alleged, in substance, that the defendant exercised due care to make the launch and scow seaworthy in all respects; that the tug was properly manned, supplied and equipped, and that the scow would likewise have been provided if S. Verstan, whom the plaintiffs selected as their agent to care for the hogs and who was in control of the barge, had remained thereon, but against the defendant's protest he deserted that vessel, boarding the tug, and refused to render any assistance when it was dis-

covered that the scow was sinking. That the loss complained of was a privation arising from the dangers of navigable waters, from the inherent propensities of the hogs to crowd each other, thereby sinking the after part of the scow, and from the refusal of the plaintiffs' agent to remain on the barge or to assist in rescuing the animals.

The reply denied the allegations of new matter in the answer, and the cause, having been tried without a jury, resulted in a judgment as demanded in the complaint, and the defendant appeals.

REVERSED. REHEARING DENIED.

For appellant there was a brief over the names of *Mr. George Shepherd, Mr. Edward J. Clark* and *Mr. John McNulty,* with an oral argument by *Mr. Shepherd.*

For respondents there was a brief over the names of *Mr. E. F. Krueger, Mr. Hamilton Johnston* and *Mr. Elmon A. Geneste,* with an oral argument by *Mr. Krueger.*

MR. JUSTICE MOORE delivered the opinion of the court.

It is contended that the complaint does not state facts sufficient to constitute a cause of action, in that the initiatory pleading is founded on the charge that the defendant was a common carrier, and hence an insurer of the property delivered to him for transportation. The plaintiffs' counsel admit that the defendant was a private carrier, but they insist that for his failure to deliver the property in the same condition as when received, their clients had the right to elect to sue in tort for the negligence or upon contract for a breach thereof which latter remedy they pursued.

1. A private carrier of goods is governed by the law applicable to ordinary bailees: Hutchinson, Car. (3 ed.), § 1; Van Zile, Bail. & Car. (2 ed.), § 402; 6 Cyc. 364; *Collier* v. *Storage & Moving Co.,* 147 Mo. App. 700 (127 S. W. 435).

2. Where a tort has been committed with respect to the subject matter of the bailment, the bailor may either bring an action for the tort, or waive the legal wrong committed upon the property received and sue for a breach of the contract of bailment: 5 Cyc. 214; *Harms* v. *City of New York,* 69 Misc. Rep. 315 (125 N. Y. Supp. 477). Thus in *Denman* v. *Chicago, B. & Q. R. Co.,* 52 Neb. 140 (71 N. W. 967), the complaint charged that pursuant to a written contract, the defendant undertook to transport from South Omaha, Nebraska, to Chicago, Illinois, 100 cattle, but did not perform the service within a reasonable time, to the plaintiff's damage, and it was held that a party with whom a carrier had made a contract to transport his property might, in case of a breach of the agreement, elect to sue for the damages for failure to perform the public duties of a carrier, or he might waive the tort and sue for a breach of the contract.

3. In that case it would seem that the defendant was a common carrier. In the case at bar the scow having been chartered to transport the plaintiffs' property only, the defendant as the owner of the vessel was *pro hac vice* not a common carrier: 1 Hutchinson, Car. (3 ed.), § 85; *Varble* v. *Bigley,* 14 Bush (Ky.), 698 (29 Am. Rep. 435); *The Dan* (D. C.), 40 Fed. 691; *The Rokeby* (D. C.) 202 Fed. 322. The complaint herein does not undertake to charge the defendant as an insurer, but as a bailee, and is sufficient for that purpose.

4. It is maintained that the testimony disclosed that

S. Verstan had an interest with the plaintiffs in the hogs that were drowned, and, not having been made a party, the complaint is insufficient in that particular. It does not appear that any exception on that ground was taken at the trial in the lower court, and, this being so, the objection of want of parties was waived: *Thompson* v. *Hibbs,* 45 Or. 141 (76 Pac. 778.)

5. But, however this may be, the contention is without merit, for it appears from a transcript of the evidence that some time prior to their shipment these hogs had been cared for by Verstan, who furnished their feed, and in consideration therefor was to have received the value of one third of their increase in weight in excess of 125 pounds, their assumed average when he received them from the plaintiffs. "A servant or agent," says a text-writer, "engaged in the business and remunerated by a share of the profits in lieu of salary or other compensation for his services is not a partner": 22 Am. & Eng. Ency. Law (2 ed.), 31.

The answer having set forth facts as a defense, predicated upon Section 3 of the Harter Act (27 U. S. Stat. 445, c. 105, U. S. Comp. Stats. 1901, p. 2946), it is argued that the loss of the hogs was a peril arising from the dangers of the Columbia River, a navigable stream, thereby relieving the defendant as the owner of the scow from all liability on account of the resulting damages, and, such being the case, an error was committed in rendering the judgment against him.

The section of the act referred to has been held applicable to vessels engaged in commerce and plying between ports of the United States: *The E. A. Shores, Jr.* (D. C.), 73 Fed. 432; *In re Piper Aden Goodall Co.* (D. C.), 86 Fed. 670; *The Nettie Quill* (D. C.), 124 Fed. 667. A practice sprang up in England of inserting in

contracts for transporting commodities by water a clause as follows:

"Any question arising under this bill of lading to be settled according to the laws of the flag of the vessel carrying the goods": *The Victory* (D. C.), 63 Fed. 631; *The Glenmavis* (D. C.), 69 Fed. 472.

Most of the foreign commerce by water is carried by English vessels. Under the decisions of the courts of that country a stipulation in a bill of lading, exempting the ship and her owners from liability on account of negligence, is upheld, while such a provision is determined to be unenforceable by the courts of the United States whereby the shipping of the latter country was by such divergent procedure placed at a great disadvantage. In order to modify the relations previously existing between the vessel and her cargo, the Harter Act was adopted: *The Delaware,* 161 U. S. 459 (40 L. Ed. 771, 16 Sup. Ct. Rep. 516). "Plainly the main purposes of this act," says Mr. Justice SHIRAS in referring to the enactment in the case of *The Irrawaddy,* 171 U. S. 187 (43 L. Ed. 130, 18 Sup. Ct. Rep. 831), "were to relieve the ship owner from liability for latent defects, not discoverable by the utmost care and diligence, and, in event that he has exercised due diligence to make his vessel seaworthy, to exempt him and the ship from responsibility for damage or loss resulting from faults or errors in navigation or in the management of the vessel."

6. As the design of the law was to aid ships sailing under the flag of the United States, particularly when engaged in the foreign trade, it would seem that the provisions of the enactment were applicable only to duly registered vessels. But, however this may be, it will be assumed, in the absence of any evidence on the

subject, that the scow used in transporting the plaintiffs' hogs was of sufficient capacity to authorize the defendant, as the owner thereof, to interpose the defense which the Harter Act affords.

7. Under Section 9 of the Judiciary Act of September 24, 1789 (1 U. S. Stat. 76), state and federal courts have concurrent jurisdiction of causes of actions in admiralty, where only a common-law remedy *in personam* is sought: *Bohannan* v. *Hammon,* 42 Cal. 227; *Home Ins. Co.* v. *Northwestern Packet Co.,* 32 Iowa, 223 (7 Am. Rep. 183); *Brown* v. *Gilmore,* 92 Pa. 40; *Chase* v. *American Steamboat Co.,* 9 R. I. 419 (11 Am. Rep. 274); *Leon* v. *Galceran,* 78 U. S. (11 Wall.) 188 (24 L. Ed. 74); *Ransberry* v. *North American T. & T. Co.,* 22 Wash. 476 (61 Pac. 154); *John Meunier Gun Co.* v. *Lehigh Valley T. Co.,* 123 Wis. 143 (101 N. W. 386). The right of the plaintiffs thus to select the forum cannot prevent the defendant from setting forth in his answer and establishing at the trial in the state court the defense of nonliability, in that the loss complained of arose from the alleged dangers of the Columbia River, a navigable stream.

8. The testimony on this branch of the case shows that the hogs were driven on the deck of the scow, where they were retained by a fence put up along the sides and at the ends of the vessel. In order to keep these animals together another section of fence was set up athwart the deck, and, being moved to the proper place, was lashed to the side fences. The scow thus loaded was towed behind the launch by a line about 80 feet in length. Leaving Linton late in the afternoon of a stormy day the tug and tow proceeded down the Willamette River to the Columbia and thence up the latter stream, where a high wind was encountered, pro-

ducing a heavy swell. The waves tossing the scow caused the hogs to crowd aft, and the vessel, beginning to sink, was hastily towed in the darkness to the bank where, the bow striking, the stern settled, drowning 16 of the hogs in the pen formed by the fencing. After the scow was raised a hole was discovered in the after rake above the usual water line. When this puncture was made does not appear from the evidence. The defendant testified that when the voyage was commenced the scow was seaworthy. This sworn declaration amounts to nothing more than a conclusion, and is insufficient, under the practice prevailing in this state, for this court definitely to say that he was blameless or to declare that the injury to the vessel, which undoubtedly was the proximate cause of the loss, resulted from the dangers incident to navigable waters. Based on such defense and the testimony adverted to, the court made a finding which reads:

"That those portions of defendant's further and separate answer with regard to the navigation of said launch and barge and compliance with the laws of navigation, and the evidence with regard to said matters, are immaterial and irrelevant to a decision of the issues in this cause."

An exception to this finding was taken. We consider such issue very material, and a finding should have been made thereon. A transcript of the entire testimony given at the trial is before us, but the defense as to whether or not the scow was free from defects when the hogs were placed aboard is a question depending largely on circumstantial evidence, and, this being so, the decision in *Taffe* v. *Smyth,* 62 Or. 227 (125 Pac. 308), is not controlling: *State* v. *Rader,* 62 Or. 37 (124 Pac. 195); *Witt* v. *Campbell-Lakin Segar Co.,* 66 Or.

144 (134 Pac. 316); *Frederick & Nelson* v. *Bard,* 66 Or. 259 (134 Pac. 318). For the failure to make the finding upon the issues referred to, the judgment is reversed and the cause remanded, for such further proceedings as may be necessary, not inconsistent with this opinion.          REVERSED.   REHEARING DENIED.

MR. CHIEF JUSTICE MCBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE RAMSEY concur.