**UNITED STATES, TO USE OF WHARTON & N. R. CO., v. COLUMBUS CIRCLE CONST. CORPORATION et al.**

(District Court, D. New Jersey. October 10, 1922.)

I. United States ☞67(3)—"Final settlement" of contracts for public work.

Under the provision of Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), authorizing suits on bonds of contractors for public work for the use of persons furnishing labor or materials to be "commenced within one year after the performance and final settlement of said contract," "final settlement" relates to the time when the amount due under the contract is determined by the appropriate administrative authority.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Final Settlement.]

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. United States ⊚⟹67(2)—"Labor" supplied to contractor for public work includes transportation of materials.

    Claims for freight and demurrage arising out of the transportation by rail of materials for use of a contractor for public work, regardless of the length of the haul, are for "labor" within the meaning of Act Aug. 13, 1894, as amended by Act Feb. 24, 1905 (Comp. St. § 6923), giving a right of action on the contractor's bond for labor and materials furnished.

    [Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Labor.]

At Law. Action by the United States, to the use of The Wharton & Northern Railroad Company, against the Columbus Circle Construction Corporation and others. On motion for determination of questions before trial. Decision for plaintiff.

James D. Carpenter, of Jersey City, N. J., for the motion.

Elmer King, of Morristown, N. J., opposed.

Treacy & Milton, of Jersey City, N. J., for intervener Detroit Steel Products Co.

Charles E. Hendrickson, of Jersey City, N. J., for intervener Kellogg Structural Steel Co.

William H. Wurts, of Jersey City, N. J., for intervener Witherow Steel Co.

John L. Dunn, of Jersey City, N. J. (T. W. D. Duke, of counsel), for intervener Asher Fireproofing Co.

BODINE, District Judge. This is an action brought pursuant to an act for the protection of persons furnishing materials and labor for the construction of public works. 28 Stat. at Large, 278, as amended by 33 Stat. at Large, 811; 8 Fed. Stat. Anno. 374 (Comp. St. § 6923).

On September 26, 1917, the Columbus Circle Construction Corporation entered into a formal contract with the United States for the construction of a naval ammunition depot at Lake Denmark, Dover, N. J. Edward J. Zahner and Henry Mandel entered into the ordinary surety bond for the faithful performance of the work. The contract was given the number of 2427–B.

Edgar H. May, assistant to the head of the construction division of the Bureau of Yards and Docks of the Naval Department, Washington, testified that the original undertaking was not completed by the Columbus Circle Construction Corporation, and that a subsequent agreement was entered into between the United States, the contractor and Mandel, one of the sureties, for the completion of the work. Mandel failed to carry on in accordance with this undertaking, and the work under the contract was completed by the Speedwell Contracting Company.

[1] Under the statute in question, the plaintiff's right to maintain its action exists, if the same has been brought within one year after complete performance of the contract and final settlement therefor, and if no suit has been brought by the United States within six months from the time of completion and final settlement.

Mr. Justice Hughes, in Illinois Surety Co. v. Peeler, 240 U. S. 214,

at page 221, 36 Sup. Ct. 321, at page 324 (60 L. Ed. 609), has succintly stated what is meant by the words "final settlement":

"But it is apparent that the word 'settlement' in connection with public contracts and accounts, which are the subject of prescribed scrutiny for the purpose of ascertaining the rights and obligations of the United States, has a well-defined meaning as denoting the appropriate administrative determination with respect to the amount due. We think that the words 'final settlement' in the act of 1905 had reference to the time of this determination when, so far as the government was concerned, the amount which it was finally bound to pay or entitled to receive was fixed administratively by the proper authority. It is manifestly of the utmost importance that there should be no uncertainty in the time from which the six months' period runs. The time of the final administrative determination of the amount due is a definite time fixed by public record and readily ascertained. As an administrative matter, it does not depend upon the consent or agreement of the other party to the contract or account. The authority to make it may not be suspended, or held in abeyance, by refusal to agree. Whether the amount so fixed is due, in law and fact, undoubtedly remains a question to be adjudicated, if properly raised in judicial proceedings, but this does not affect the running of the time for bringing action under the statutory provision."

Mr. May testified that Admiral C. V. Parks was chief of the Bureau of Yards and Docks during the time in question, and had charge of the determination of questions of settlement and payment of moneys due. He produced a letter, under date of April 15, 1921, signed by Admiral Parks to the Commandant of the Third Naval District in which it was stated:

"Accordingly final payment under contract No. 2427–B–X in the sum of $1,465.74 is authorized, subject to the execution by the contractors of the unqualified release of claims."

It is to be borne in mind that this contract, No. 2427–B–X, was the supplemental agreement between the original contractor, the surety, and the government for the performance of the contract 2427–B in accordance with the requirements set by the original instrument, and amounted to no more than an agreement between the original contractor, the surety, and the government that payments were to be made to the surety rather than to the contractor.

Under the definition of final settlement, as stated by Mr. Justice Hughes, there would seem no doubt that settlement was determined not earlier than the letter of Admiral Parks of April 15, 1921. A report, however, of January 24, 1920, from the Naval Examining Board to the Commandant of the Third Naval District, offered in evidence, fixed the amount due under the contract.

So far as appears from the testimony, the finding of the Naval Board was no more than a recommendation, and it was not until Admiral Parks directed payment that there was a final settlement, for Mr. May testified that it was by this letter alone that the government, through its Bureau of Yards and Docks, determined the amount which it was finally to pay under the contracts.

The plaintiff may maintain its suit brought within one year from the date of completion of the contract and final settlement; the government not having brought a suit within six months.

[2] The defendant urges that the plaintiff's claims are for freight

and demurrage, and that such charges are not for labor or material within the meaning of the act of Congress. The act is to be liberally construed. Bankers' Surety Co. of Cleveland v. Maxwell, 222 Fed. 797, 138 C. C. A. 345.

Judge Putnam decided in American Surety Co. of New York v. Lawrenceville Cement Co. (C. C.) 110 Fed. 717, that a carrier from distant points by rail was not entitled to recover for his freight charges; the learned judge making a distinction between carriage from distant points and short hauls. He based his conclusion further upon the ground that the carrier by rail had a lien which, by the release of goods, he lost, and thereby stripped the surety of any right of subrogation.

A contrary rule is reached in Pennsylvania. See United States v. Hegeman, 204 Pa. 438, 54 Atl. 344. Claims for cartage and towage are within the act. Title Guaranty & Trust Co. of Scranton v. Crane Co., 219 U. S. 24, 34, 31 Sup. Ct. 140, 55 L. Ed. 72.

Judge Putnam's reason for excluding carriers of material from distant points was that the carrier had a lien for freight. Under the Sale of Goods Act (P. L. 1907, p. 311) every unpaid vendor has a lien for the unpaid price. Carried to its logical conclusion, the reasoning of Judge Putnam would not admit of the recovery for any materials, but, if it be said that his determination did not rest upon the lien theory, then the determination must depend on whether the labor was in a long haul or a short haul. If a person hauled goods one mile, it might be labor. It he hauled for 100 miles, it would be something else, or a truck driver bringing material for a distance of 100 miles might be entitled to a lien, and a railroad corporation hauling for 90 miles might not. The law is not so jumpy.

The only remaining questions in this case for solution are amounts due the Wharton & Northern Railroad Company and the other claimants who have intervened.

All parties agree that these questions may be best determined by a reference to a master. An order may accordingly be entered directing the master to complete the proofs and make his report within one month from date of entry.