

# THE ATTORNEY GENERAL

## OF TEXAS

AUSTIN 11, TEXAS

GROVER SELLERS
~~WILL WILSON~~
ATTORNEY GENERAL

Honorable D. C. Greer
State Highway Engineer
Texas Highway Department
Austin, Texas

Dear Sir:         Opinion No. 0-6291
                  Re:  Is a freight demurrage charge, pre-
                       sented to the Highway Department by
                       a railroad company against a highway
                       contractor, a lienable claim?

        We are in receipt of your letter of a recent date
requesting the opinion of this department on the above stated
question.  Your letter reads, in part, as follows:

        "In order that the Texas Highway Department
may correctly handle freight demurrage claims
against Highway Contractors, when submitted to us
by Railroad Companies, we request that you please
render an official opinion on the following ques-
tion:

        "Is a freight demurrage charge, presented
to the Highway Department by a Railroad
Company against a Highway Contractor, a
lienable claim?"

        Articles 5472a, 5472b, 5472b-1 and 6674m, Vernon's
Annotated Civil Statutes, are the Texas Statutes pertinent to
your inquiry.

        Article 5472a, V. A. C. S., provides:

        "That any person, firm or corporation, or trust
estate, furnishing any material, apparatus, fixtures,
machinery or labor to any contractor for any public
improvements in this State, shall have a lien on the
moneys, or bonds, or warrants, due or to become due
to such contractors for such improvements; provided,
such person, firm, corporation, or stock association,
shall, before any payment is made to such contractor,
notify in writing the officials of the State, county,
town or municipality whose duty it is to pay such
Contractor of his claim.  Acts 1925, 39th Leg., ch.
17, p. 44, 81."

Article 5472b, V. A. C. S., provides:

"That no public official, when so notified in writing, shall pay all of said moneys, bonds or warrants, due said contractor, but shall retain enough of said moneys, bonds or warrants to pay said claim, in case it is established by judgment in a court of proper jurisdiction.  Acts 1925, 39th Leg., ch. 17, p. 44, § 2."

Article 5472b-1, V. A. C. S., provides:

"Sec. 1.   That whenever any claim or claims shall be filed attempting to fix a lien, secured or claimed by any instrument filed under the provisions of Chapter 17, of the General Laws of the State of Texas, passed by the Thirty-ninth Legislature in Regular Session, that the contractor or contractors against whom such claim or claims are made, may file a bond with the officials of the State, county, town or municipality whose duty it is to pay the moneys, bonds or warrants to such contractor or contractors.  Said bond shall be double the amount of the claims filed, and shall be payable to the claimant or claimants.  It shall be executed by the party filing same as principal, and by a corporate surety authorized under the laws of Texas to execute such bond as surety, and shall be conditioned substantially that the principal and surety will pay to the obligees named, or their assigns, the amount of the claim or claims, or such portion or portions thereof as may be proved to have been liens, under the terms of Chapter 17, General Laws of the State of Texas, passed by the Regular Session of the Thirty-ninth Legislature.  The filing of said bond and its approval by the power official of the State, county, town or municipality, shall release and discharge all liens fixed or attempted to be fixed by the filing of said claim or claims, and the official or officials whose duty it is to pay the moneys, bonds or warrants shall pay or deliver the same to the contractor or contractors or their assigns.  Said official shall send by registered mail an exact copy of said bond to all claimants.

"Sec. 2.   At any time within six months from the date of filing of said surety bond, the party making or holding such claim or claims may sue upon such bond, but no action shall be brought on such bond after the expiration of such period.  One action upon said bond shall not exhaust the remedy thereon,

but each obligee or assignee of an obligee named
therein may maintain a separate suit thereon in any
court and in any jurisdiction.  If any claimant or
claimants in an action establish the fact that they
were entitled to a lien under the provisions of
Chapter 17 of the General Laws of the State of Texas,
passed at the Regular Session of the Thirty-ninth
Legislature, and shall recover judgment for not less
than the full amount for which claim was made, the court
shall fix a reasonable attorney's fee in favor of the
claimant or claimants, which shall be taxed as part of
the costs in the case.  The bond provided in Section One
of this Act shall also be conditioned that the principal
and surety will pay all court costs adjudged against the
principal in actions brought by claimant or claimants
thereon.  Acts 1929, 41st Leg., 2nd C.S., p. 154, ch.
78."

Article 6674m, V. A. C. S., provides:

"Said contracts may provide for partial payments
to an amount not exceeding (90%) of the value of the
work done.  Ten per centum of the contract price shall
be retained until the entire work has been completed
and accepted, and final payment shall not be made until
if is shown that all sums of money due for any labor,
materials, or equipment furnished for the purpose of such
improvements made under any such contract have been paid."

Articles 5472a, 5472b, 5472b-1, and 6674m, are in
pari materia and should be construed together.  Huddleston &
Work v. Kennedy, Civ. App., 57 S. W. (2d) 255.  These articles,
in general, provide additional security for the payment of
claims against a contractor in favor of those who furnish any
material, equipment or labor to any contractor for any public
improvements in this State, by means of either (1) a lien
against funds designated for the payment of said contractor,
or (2) a bond which the contractor makes in lieu of said
lien.

With reference to your question as to whether a
charge for demurrage is a lienable claim, it is necessary to
determine whether demurrage is included within the meaning
of the language, "furnishing any material, apparatus, fix-
tures, machinery or labor to any contractor . . ."  (Article
5472a), and whether money due a railroad company for demur-
rage charges comes within the meaning of the language,
". . . all sums of money due for any labor, materials  or
equipment furnished for the purpose of such improvements
made under any such contracts. . ."  (Article 6674m).  Although

the precise question here raised has not been passed upon by the appellate courts of this State, the construction of similar language by our federal courts and the courts of other states is highly persuasive as to the construction to be given the above language in our statutes.

We point out here that it has been held that demurrage charges are to be construed as a part of the charges for transportation service. Philadelphia B. & W. R. Co. v. Quaker City Flour Mills Co., 127 A. 845, 846; 282 Pa. 362; Milne Lumber Co. v. Michigan Cent. B. Co., Mo. App., 57 S. W. (2d) 732, 735. In many of the cases hereinafter cited, "freight" and "demurrage" are considered together in the determination as to whether a claim for transportation costs is an allowable claim within the meaning of statutes providing additional security for the payment of those who furnish labor, material or equipment to a public works contractor.

In the federal statute (40 U. S. C. A., Sec. 270) which required the contractor to make a bond to secure the payment of the claims of those who furnished labor or materials to contractors on public works, we find the following language similar to that of our statutes: "Supplying him or them with labor and materials in the prosecution of the work." The early construction of these words by the federal courts were rather strict. In United States v. Hyatt (C. C. A.) 92 F. 442, the court concluded that the services of a railroad were not "labor". This decision was followed in Mandel v. United States (C.C.A.) 4 F. (2d) 629. But the foregoing strict rule of construction has been set aside by the holdings in later cases.

In case of City of Stuart v. American Surety Co., 5 Cir., 38 F. (2d) 193, 194, a Florida statute required contractors for public work to execute a bond with the obligation that "such contractor, or contractors, shall promptly make payments to all persons supplying him, or them, labor, material and supplies, used directly or indirectly by the said contractor . . . or sub-contractors in the prosecution of the work provided for in said contract." Under this statute, suit was brought against a contractor's surety to recover for freight, switching and demurrage charges on carload material used in the performance of said contract. In this case it was held that such charges were within the liability of the contractor's bond.

In discussing the matter as to whether charges for freight and demurrage were claims charged against the contractor's bond within the meaning of the language, "supplying him, or them, labor, material and supplies" (40 U.S.C.A., Sec. 270), the court, in part, said:

"Protection is expressly extended to <u>all persons</u> who furnish the named things, whether under lien or not, whether individual or corporation, rich or poor, supplying in person or through agents and representatives .... A railroad company is not excluded. In point of fact, many persons who have a lien enforceable by retention have been held to be within the statute. Nor is the nature of the work done in transportation such as to prevent its being labor. Much of what is done by the agents of the railroad company is hard labor, and the doing of the work, even by the use of machines, is recognized as labor under the statute . ...... Transportion of materials by cart and towboat is uniformly allowed as labor. United States Fidelity & Guaranty Co. v. United States, 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Title Guaranty & Trust Co. v. Crane Co., 219 U. S. at page 34, 31 S. Ct. 140, 55 L. Ed. 72. In what way can the distance of the transportation or the fact that it is over a specially prepared rail track make it any the less labor? It was held in Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, that, where track and cars and equipment were rented by the contractor, and used by him in transportation for the job, the rental was protected by the bond. If he should charter a railroad or a train, the railroad company could, under this decision, recover. Why not when it furnishes single cars? By all the cases, when a furnisher of material pays the freight, whether bound to do so or because the contractor does not pay, the freight is added to the cost of the material, and protected. See Maryland Casualty Co. v. Ohio River Gravel Co. (C.C.A.) 20 F. (2d) 514. The same 'place value' is given the material by the transportation, no matter who pays the freight, and to the same extent is material furnished.

"The decisions of the Supreme Court reject the theory of strict construction, and adopt that of liberal construction in the allowance of claims above alluded to. Illinois Surety Co. v. John Davis Co., 244 U.S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; United States Fidelity & Guaranty Co. v. United States, 231 U.S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L.R.A. 1918D, 776. . . . . ."

In construing the language, "prompt payment to any person or persons doing work or furnishing skill, tools, machinery or materials under and for the purpose of said con-

tract", the court stated that railroad transportation of materials combined the furnishing of work, skill, and machinery for the purpose of the contract, even if not labor in the narrow sense originally attributed to the word in eariler cases.

In Standard Ins. Co. v. United States, 302 U.S. 442, 58 S. Ct. 314, 82 L. Ed., the court held that a claim of a common carrier by railroad for unpaid charges due for transportation of materials used in the construction of a federal building is one for "labor and materials" within the meaning of the Act requiring a bond for the prompt payment by the contractor to "all persons supplying him, or them, with labor and materials in the prosecution of the work provided for in said contract" (40 U.S.C.A., Sec. 270). In this connection the court said:

"'Certainly labor is required for loading freight on railroad cars, moving these over the road, and unloading at destination. A carrier who has procured the doing of all this in respect of material has "furnished labor". If a contractor had employed men to move the same kind of material in wheelbarrows, there could be no doubt that he furnished labor. In principle the mere use of cars and track and a longer haul creates no materially different situation. Nor do we find reason for excluding the carrier from the benefit of the bond because it might have enforced payment by withholding delivery. The words of the enactment are broad enough to include a carrier with a lien. Nothing in its purpose requires exclusion of a railroad. Refusal by the carrier to deliver material until all charges were paid might seriously impede the progress of public works, possibly frustrate an important undertaking.' ...."

This case was appealed to the Circuit Court of Appeals, Fifth Circuit, and in Standard Accident Ins. Co. v. United States, 89 F. (2d) 658, April 14, 1937, the Court affirmed the holding by the district court (82 L. E., supra) and expressly approved the ruling in City of Stuart v. American Surety Co., supra.

In the recent (1940) case of Sommers Const. Co. et al. v. Atlantic Coast Line R. Co., 7 S. E. (2d) 429, Court of Appeals of Georgia, Division No. 2, February 15, 1940, the court held that there was no substantial difference between the phrase" doing work or furnishing skill, tools, machinery or materials under or for the purpose of such contract", as used in the state statute, and the phrase "supplying him or

them with labor and materials in the prosecution of the work",
as used in the federal statute (40 U.S.C.A., Sec. 270),
under which a  claim for unpaid freight charges has been con-
strued to be a claim for "labor and materials".  The court
further held that a claim by a railroad company for unpaid
freight and demurrage charges for shipments used in construc-
tion of a state highway project was a claim for "doing work
or furnishing skill, tools, machinery or materials" within
the State statute and the contractors' bond given pursuant
thereto, and that the railroad company could recover on the
bond, notwithstanding it had a carriers's lien which it could
have exercised by withholding delivery.

The fact that a railroad company already has a
special lien which it could exercise by withholding delivery,
when a charge for freight or demurrage is unpaid, does not
exclude a railroad company from the security afforded those
who furnish labor, material, or equipment to a contractor on
public improvements.  City of Stuart v. American Surety Co.,
supra.  State of Delaware v. Aetna Casualty & Surety Co.
(Del.) 145 A 172, 176; Sommers Const. Co. v. Atlantic Coast
Line R. Co., supra.  In this connection, in the case of State
of Delaware v. Aetna Casualty & Surety Co. (Del.) 145 A. 172,
176, the court said:

"'The argument that it would be inequitable
to allow a carrier to surrender the lien and collect
from the surety does not appeal to us.  What is a
carrier's lien?  It is simply the right to hold the
consignee's cargo until payment is made for the work
of transporting it.  In simple terms it is the right
to withhold the enjoyment by another of the fruits of
work done in his behalf until he pays therefore.  The
carrier is authorized by the law of liens to say in
substance what an ordinary laborer or vendor of goods
is in position to say, viz., pay me for my labor in
advance or for my goods before delivery, otherwise
you shall not enjoy the benefits of the one or pos-
sess the other.  The carrier, notwithstanding the
cargo is the consignee's, can similarly say--before
I complete the labor of transportation by delivery
to you, pay me for my work.  That is all  the lien is.
It does not follow the goods when delivered, nor can
the consignee be compelled to pay until they are de-
livered.  Now what reason can there be in holding
that a laborer or a materialman may deliver his labor
or materials on credit and go against the surety in
case of nonpayment, but a transporter if he surrenders
the cargo may not?  If he may not, then this is the
result, the very act of surrendering the cargo which

will give rise to the debt, will relieve the surety company of its guaranty of payment, and carriers when they are afraid to extend credit to the contractor will therefore hold back the materials and obstruct the work, a result which must be inharmonious with the statute's purpose'".

That our Texas statutes, providing additional security for the payment of claims of those who furnish materials, equipment or labor for public improvements contractors are to be liberally construed is shown by several decisions. In Smith v. Texas Co., Comm. App., 53 S.W. (2d) 774, it was held that article 5472a, giving a lien in favor of persons furnishing materials, equipment and labor to public improvements contractors should be liberally, not strictly construed, and that the benefits of said act were applicable to those furnishing materials to sub-contractors. In Foty v. Rotchstein, Civ. App., 60 S.W. (2d) 892, it was held that when groceries were furnished a contractor and consumed by laborers on public work, the seller is entitled to a lien on funds due the contractor, if it is shown that necessity exists for furnishing such supplies in the construction of public improvements. In Thurber Construction Co. v. Kemplin, Civ. App., 81 S.W. (2d) 103, it was held that claims for feed furnished for teams of subcontractors were allowable as lien against funds due general contractor in the hands of the State Highway Commission.

It is apparent that the language in the Texas Statutes with reference to the additional security afforded those who furnish material, equipment and labor to a contractor on public improvements is substantially the same as to meaning and purpose as that of the legislative acts interpreted by the federal courts and courts of other states in the various cases herein cited. From an analysis of Articles 5472a, 5472b, 5472b-1, and 6674m, it is apparent that the broad purposes and intentions of said legislation are twofold: (1) to protect the honest claims of all persons or corporations who have contributed to the performance of the work in connection with a contract for public improvements, and (2) to minimize impediments and delay of the work, and facilitate procurement of materials, equipment and labor through the security afforded by the lien (Article 5472a) or the bond in lieu of said lien (Article 5472b-1). If the carrier's legitimate claims against the contractor are included in the benefits provided, the foregoing purposes and intentions will be better served. If such claims are not included, the carrier could hold the freight until payment is made, and if not paid, sell it for charges, and thereby embarrass the progress of the work. We can see no intention to exclude those who furnish transporta-

tion service from the benefits afforded by the Act. The authorities have recognized the transportation as being very vital in the prosecution of contracts for public improvements, as demonstrated by their construction of the language "labor, materials, and equipment." In U.S. v. Hercules Co., 52 F. (2d) 451, the court pointed out that the instances in the authorities where claims for transportation charges have been allowed against the surety under a statute requiring a bond for the prompt payment of all claims for labor, material and equipment against a public contractor are of three classes.

(1) The first class is where the seller of materials furnished has paid the transportation costs or agreed to pay the transportation costs, and said materials have been actually and practically consumed in the process of construction. In these cases, the transportation charges have been allowed the seller of the material as representing substantially a part of the purchase price, and the claims for transportation charges were allowed the seller for "materials" furnished within the intent of that word as used in the statute. U.S. v. Morgan, (C.C.) 111 F. 474, 488; Maryland Casualty Co. v. Ohio River Gravel Co. (C.C.A.) 20 F. (2d) 514; 21 F. (2d) 744.

(2) The second class is where the contractor has agreed to pay the transportation costs, and the material is actually and practically consumed in the process of that particular construction. In these instances, the services performed by the carrier in transportation have been regarded as "labor" furnished the contractor, as that word is used in the statute granting security for the payment of claims against the contractor for "labor", because the full value of the services is furnished the contractor and inures to the benefit of the work. City of Stuart v. American Surety Co. (C.C.A.) 38 F. (2d) 193; State v. Aetna Casualty & Surety Co. (Del Sup.) 145 A. 172, 173.

(3) Claims have been allowed against the surety for transportation costs upon hired teams, tools, machinery or plant equipment. The use of such property is deemed labor furnished the contractor. The transportation costs on such equipment are regarded as an item of the rental and as a fair rental value for such equipment, during the period of that particular construction, goes into the work, the transportation costs, as an ingredient thereof, are likewise included. U.S. v. Illinois Surety Co. (C.C.A.) 226 F. 653, 662. U.S. v. Post Deposit Quarry Co. (D.C.) 272 F. 698; 277 F. 1019.

It should be noted that, generally, an unpaid claim is allowable within a statute providing additional security

for those who furnish labor, materials or equipment in carrying out the provisions of highway construction contracts, if it is such that a cost accountant would charge it as a direct expense item to a particular job, and not to the capital investment of the contractor. Margulies v. Ogdie, S.D., 10 N.W. (2d) 513, 515.

As stated heretofore, "demurrage charges" have been held to be an ingredient of and considered in connection with "transportation charges". A proper charge for demurrage is considered as a charge incident to transportation (8 Tex. Jur., 196, 204), and the holdings with reference to claim for transportation services would likewise be applicable to claims for freight demurrage charges.

In view of the foregoing, it is the opinion of this department that a freight demurrage charge, presented to the State Highway Department by a railroad company against a highway contractor, is a lienable claim within the meaning of our statutes, provided the claim represents a direct expense item in carrying out the provisions of a particular highway construction contract.

Trusting that the above satisfactorily answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS


By s/J. A. Ellis
J. A. Ellis
Assistant

JAE:fo


APPROVED DEC 7, 1944
s/Grover Sellers
ATTORNEY GENERAL OF TEXAS

Approved Opinion Committee by s/BWB Chairman