UNITED STATES, to Use of SABINE & E. T. RY. CO., v. HYATT et al.

(Circuit Court of Appeals, Fifth Circuit. February 7, 1899.)

No. 749.

UNITED STATES—BOND OF CONTRACTOR FOR PUBLIC WORK—FREIGHT CHARGES ON MATERIAL.

A bond required by the United States from a contractor for public work, under the act of August 13, 1894 (28 Stat. 278), conditioned that the contractor shall promptly pay all persons who supply labor and materials in the prosecution of the work, does not cover a charge by a railroad for freight on materials which are loaded and unloaded by the contractor, such charges being neither for labor nor materials, within the meaning and purpose of the act.

Writ of Error to the Circuit Court of the United States for the Eastern District of Texas.

This suit was brought by the Sabine & East Texas Railway Company, in the name of the United States, on a bond which F. A. Hyatt & Co. executed to the United States. The railway company claims that F. A. Hyatt & Co. are indebted to it for transportation charges, and that the principals and sureties on the bond just mentioned are liable for the indebtedness. A jury was waived in the trial court. The judge made findings of fact and law.

His findings of fact are, in substance, as follows:

F. A. Hyatt & Co., having, on January 4, 1895, entered into a contract with the United States to do certain work in the construction of East Jetty, at Sabine Pass, Tex., furnished a bond to the United States in the sum of $30,000, for the faithful performance of their contract. This contractors' bond was executed on January 5, 1895, with J. T. Munson and J. B. McDougall as sureties. It contained a stipulation, under the act of congress approved August 13, 1894 (28 Stat. 278), that "F. A. Hyatt & Co. shall be responsible for all liabilities incurred in the prosecution of the work, for labor and materials, and shall promptly make payment to all persons supplying him or them labor or materials in the prosecution of the work." It was

necessary, in the prosecution of the work. for F. A. Hyatt & Co. to furnish a large amount of sand rock, which they did by procuring the same at Rockland, Tex., a point distant about 120 miles from Sabine Pass, and on the line of the Sabine & East Texas Railway Company, which is a common carrier. For the purpose of transporting the sand rock from Rockland to Sabine Pass, F. A. Hyatt & Co., on March 29, 1895, entered into a contract with said railway company. This contract provided that the railway company agreed to "carry over their lines shipments of sand rock to be used for the construction of jetties at Sabine Pass, as described and defined in contracts between the United States government, dated January 4, 1895," and F. A. Hyatt & Co. The contract provided for the rate of freight which F. A. Hyatt & Co. were to pay the railway company. F. A. Hyatt & Co. were to load the cars at Rockland, and unload them at Sabine Pass, and they waived "all claim for damages, or for the value of the sand rock lost by wreck, or for damage or delay caused by flood or by any other cause beyond the control of" the railway company. It was further agreed that F. A. Hyatt & Co. would pay the railway company, "between the 1st and 15th of each subsequent month, for all material transported under the provisions of the agreement during the preceding month." It was further agreed that "bond in sufficient amount will be furnished by the parties of the second part [F. A. Hyatt & Co.] to the parties of the first part [the railway company] which shall insure payment of said transportation charges." This contract between F. A. Hyatt & Co. and the railway company was, as stated, executed on March 29, 1895, and it was provided that it should terminate on October 1, 1895, unless renewed or extended by mutual consent. The bond provided for by the contract between F. A. Hyatt & Co. and the railway company was furnished by F. A. Hyatt & Co. for the prompt payment, according to the terms of the contract of March 29, 1895, of the transportation charges to the railway company. This bond was for $10,000, and was signed by F. A. Hyatt & Co. as principals, and by Edward Perry, a member of the firm of F. A. Hyatt & Co., and one J. J. Solinsky, as sureties. It was under said contract and bond just referred to, of March 29, 1895, that the sand rock was transported from Rockland to Sabine Pass, and the railway company relied upon that bond as security for the payment to it of all freight charges for the transportation of said sand rock, and did not rely upon the bond executed by F. A. Hyatt & Co. to the United States on January 5, 1895. The railway company transported, at the instance of F. A. Hyatt & Co., a large amount of sand rock under the contract of March 29, 1895, and the freight charges therefor amounted, in the aggregate, to the sum of $28,061.58. F. A. Hyatt & Co. paid the railway company various sums of money from time to time, and on April 28, 1896, there was due the railway company by F. A. Hyatt & Co., for the transportation of rock under said contract of March 29, 1895, $12,019.15; and on that date the railway company brought suit in the district court of Jefferson county, Tex., against F. A. Hyatt and Edward Perry, composing the firm of F. A. Hyatt & Co., and against Edward Perry and J. J. Solinsky, as sureties upon the bond of March 29, 1895. In that suit in the state court, the railway company, on May 20, 1896, dismissed the suit as against J. J. Solinsky, one of the sureties, in consideration of the sum of $6,000, paid to the railway company by F. A. Hyatt & Co. on May 16, 1896, and the railway company agreed that Solinsky be discharged from all liability on the bond of March 29, 1895. The cause was continued as to F. A. Hyatt & Co. and Edward Perry until the next term of court, in the following November. All of this—the payment of the $6,000, the discharge of Solinsky, and the continuance of the cause as against F. A. Hyatt & Co. to the following November—was done by virtue of an agreement of counsel in the cause. On November 18, 1896, the railway company in said suit in the state court, obtained a judgment against F. A. Hyatt & Co. and Edward Perry for the sum of $6,445.79, being the balance due after deducting the $6,000 paid the railway company on May 16, 1896.

## The trial judge's conclusions of law are, in substance, as follows:

The judge found that the railway company, being a common carrier, would have had a lien upon all rock transported for F. A. Hyatt & Co. if it had not required of them a bond to secure the payment of freight charges for trans-

porting the rock, but that having required a bond, with security, to secure the payment of said freight charges, it thereby released its lien upon any rock it transported for F. A. Hyatt & Co.; that by the execution of the bond from F. A. Hyatt & Co. to the railway company, and the terms of the contract between those parties, the contractual relations existing between F. A. Hyatt & Co., and any person furnishing them labor and material by virtue of the bond executed to the United States, were changed from prompt payment for all labor and material to payment for transporting said rock between the 1st and 15th of the month for all freight charges accruing during the previous month; that the railway company released its lien for freight; that the bond executed by F. A. Hyatt & Co. to the railway company; and the contract between those parties, which was made a part of that bond, were executed and accepted for the purpose, by the railway company, of complete security for the freight charges that would accrue under the contract between F. A. Hyatt & Co. and the railway company, and the bond of March 29, 1895, was intended by both F. A. Hyatt & Co. and the railway company to take the place of any other security that said railway company might have for freight charges; and that by the continuance of the case in the state court from May to November, 1896, upon the payment of $6,000 by F. A. Hyatt & Co., and the resulting extension of time for payment, and by the release of Solinsky as surety, a material alteration in the contractual relations between the railway company and F. A. Hyatt & Co. was effected.

The trial judge concluded his findings as follows:

"From all the above, I conclude that there is now no liability upon the part of the defendants in this cause to plaintiff, because there had been a complete change of contractual relations between plaintiff and defendants, since they executed the bond herein sued on, by the release of the lien in favor of plaintiff for freight charged; by the accepting of a bond from Hyatt & Co., with Edward Perry and J. J. Solinsky, securities, in lieu of, and in substitution of, the bond herein sued upon; by the release of Solinsky as surety; by the continuance by consent of parties plaintiff and Hyatt & Co., by judgment from November, 1896. I therefore find for the defendants."

The railway company excepted to the trial judge's conclusions of law, and, judgment having been rendered against it, it has sued out a writ of error to this court.

R. S. Lovett, J. D. Martin, and J. N. Votaw, for plaintiff in error.
A. C. Bullitt, for defendants in error.

Before PARDEE and McCORMICK, Circuit Judges, and PARLANGE, District Judge.

PARLANGE, District Judge (after stating the facts as above). Under the view which we take of this cause, it is unnecessary for us to pass upon certain matters discussed at considerable length in the briefs, such as the question whether the execution of the bond by F. A. Hyatt & Co. to the railway company, the proceedings on that bond in the state court, including the release of a surety on that bond and the granting of time to the principals, operated, quoad the railway company, the discharge of the obligation of the sureties on the bond executed by F. A. Hyatt & Co. to the United States. These and other matters discussed in the briefs are based upon the assumption that the railway company was a beneficiary of the bond executed to the United States. We are clearly of opinion that the railway company never had a right of action on this bond. The act of congress approved August 13, 1894 (28 Stat. 278), provides that persons who contract with the United States to perform public work shall

add to the usual penal bond an obligation to promptly pay all persons who supply "labor and materials" in the prosecution of the work. It is plain that the railway company did not supply "materials," for the stone which it carried was not supplied by it. The question is, did the railway company supply labor to the contractors, within the intendment of the act of congress just mentioned? This labor would consist in carrying the stone, the labor of loading and unloading being performed by the contractors. The labor which congress intended to protect, by the act under discussion, is evidently labor used directly upon the public work, claims for which would be made by the laborers primarily against the work; thus impeding, possibly, the prosecution of the work and hampering the government officers. Congress could not have intended to include in the term "labor," as used in this act, the freight charges of a railroad on materials carried by it. The railroad is abundantly protected by its lien on freight, and congress did not contemplate that a charge for transportation by a railroad would be made against the work, and certainly not when the carrier was fully secured otherwise. We notice, incidentally, that it is apparent that the railway company believed that it had no recourse against the bond executed to the United States, and that it protected itself, and proceeded throughout in accordance with that belief. The judgment of the lower court is affirmed.