WISCONSIN BRICK COMPANY vs. NATIONAL SURETY COMPANY, Respondent, and another, Appellant.

*December 5, 1916—January 16, 1917.*

*Mechanics' liens: State buildings: Bond for payment of claims: Carriers: Freight charges on materials.*

1. Government buildings are exempt from the operation of the mechanic's lien statute.
2. Sec. 3327a, Stats.,—requiring a bond to be given for the payment of all claims "for work or labor performed, and material furnished in and about" the erection of any building for the state,—was not intended to give a remedy more extensive than that given by the mechanic's lien statute, nor to give a remedy to any different classes of persons.
3. A common carrier which, in the exercise of its ordinary functions, transports building material consigned by others to the principal contractor for a private building, is not entitled, under sec. 3315, Stats., to a lien on such building for the freight charges; nor does the bond required by sec. 3327a cover such charges in the case of a state building.

APPEAL from a judgment of the circuit court for Dane county: JAMES WICKHAM, Judge. *Affirmed.*

The action is brought to recover upon two bonds given pursuant to sec. 3327a, Stats., to the board of regents of the University of Wisconsin by the firm of W. H. Grady &

Company as principals and the *National Surety Company* as surety to insure the carrying out of two contracts by said firm to erect two buildings for the University. The bonds were each conditioned for the payment by the contractor of "all of the claims for work or labor performed and materials furnished in and about the erection or construction of such building to each and every person entitled thereto." The firm of Grady & Company defaulted on their contract and went into bankruptcy and the regents took possession of the material and machinery on the ground and completed the building. Grady & Company were largely indebted to subcontractors and materialmen, and the Wisconsin Brick Company brought this action on the bond against the surety company alone to recover for brick furnished to Grady and Company for the buildings. Upon petition, all laborers and materialmen having unpaid claims against Grady & Company for work or material on the two buildings were joined as parties defendant and directed to file their claims. Trial by jury was waived and the issues arising on the various claims were tried by the court. The appellant, *Chicago, Milwaukee & St. Paul Railway Company,* filed its claim by way of cross-complaint against the surety company to recover the sum of $838.35 for freight charges on materials transported by it over its railroad, which materials were admittedly used in the construction of the buildings. The materials aforesaid consisted principally of sand and gravel and were delivered to Grady & Company upon the premises at the immediate point where they were required for use, upon a temporary sidetrack which the railway company had constructed for the purpose. The facts were undisputed, but the trial court concluded that no part of the claim was "for work or labor performed or materials furnished in or about the erection or construction" of either of the buildings, and dismissed the claim. From this judgment the railway company appeals.

For the appellant there was a brief by *Sanborn & Blake,*

attorneys, and *C. H. Van Alstine* and *H. J. Killilea,* of counsel, and oral argument by *C. E. Blake.*

For the respondent there was a brief by *Richmond, Jackman & Swansen,* and oral argument by *W. C. Owen.*

WINSLOW, C. J.    The question presented is not free from difficulty, but we think the trial court reached the correct conclusion.

The bonds in question were given pursuant to sec. 3327*a,* Stats.    This section provides in substance that all contracts for the building of buildings for the state shall contain a provision "for the payment by the contractor of all claims for labor and material," and further that no such contract shall be let unless a sufficient bond be given for the faithful performance of the contract "and the payment of all the claims for work or labor performed, and material furnished in and about the erection, construction, . . . of such building to each and every person entitled thereto."

This section was first passed in 1899 (ch. 292, Laws 1899). and took its place in ch. 143 of the Statutes treating of the subject of liens in Sanborn & Sanborn's Supplement to the Wisconsin Statutes published in 1906.    It has retained its place in that chapter in all the editions of the general statutes published since that time.

It is quite apparent that it was passed in order that materialmen and laborers employed upon state buildings should not be remediless in case of bankruptcy of the principal contractor.    It was well understood that there could be no mechanic's lien on a government building.    *Wilkinson v. Hoffman,* 61 Wis. 637, 21 N. W. 816.    It was felt that materialmen and laborers on such buildings were as much entitled to protection as those who furnished materials or labor in the construction of a building owned by private parties. While this is the plain intention of the act, there is no indication that it was intended to give any more extensive remedy than that furnished by the mechanic's lien law nor to give a

remedy to any different classes of persons, but rather there is every indication that the remedy was intended to be co-extensive with the mechanic's lien remedy.

The clearest indication of this intent is to be found in the fact that the wording of the contract and the bond as laid down by the statute is to all intents and purposes identical with the wording of that part of the mechanic's lien statute which gives a lien to materialmen and laborers who perform work or furnish materials in the erection of a private building. The inclusion of the section in the chapter on liens in the Statutes in immediate connection with the section relating to mechanics' liens in every authorized edition of the Statutes is another very convincing indication of the legislative thought. Identical words in the two statutes should doubtless receive identical construction. If there would be no mechanic's lien here were the building owned by private parties, there ought to be no liability on the bond.

We are not referred to any authority which holds a common carrier entitled to a mechanic's lien for freight charges on material used in the work. It is true that it has been frequently held that where freight charges are really or in substance a part of the purchase price of materials they can properly be allowed to the materialman. *Barker & Stewart L. Co. v. Marathon P. M. Co.* 146 Wis. 12, 130 N. W. 866; *Brace & Hergert M. Co. v. Burbank,* 87 Wash. 356, 151 Pac. 803. It has also been held that where one under contract with the owner or principal contractor hauls material for the construction or repair of a building he is entitled to a lien therefor. *Hill v. Newman,* 38 Pa. St. 151; *Kehoe v. Hansen,* 8 S. Dak. 198, 65 N. W. 1075; *Hill v. Twin Falls S. R. L. & W. Co.* 22 Idaho, 274, 125 Pac. 204; *McClain v. Hutton,* 131 Cal. 132, 61 Pac. 273, 63 Pac. 182, 622; *Davis v. Mial,* 86 N. J. Law, 167, 90 Atl. 315; *Fowler v. Pompelly,* 25 Ky. Law Rep. 615, 76 S. W. 173. In the present case there was no contract between either the state or Grady & Company and the railway company. The company in the ex-

ercise of its ordinary functions as a common carrier received at a distant station sand shipped by various persons and consigned to the contractor, and transported the same to Madison and placed the cars containing it on the temporary sidetrack aforesaid. It unquestionably had a carrier's common-law lien thereon for its freight charges (*Warehouse & B. S. Co. v. Galvin,* 96 Wis. 523, 71 N. W. 804), but it waived that lien by allowing the contractor to take possession of it without prepayment of the freight charges. Would it be entitled to a lien on the building if it had been owned by private persons? We think not. The lien law was doubtless intended to give a lien to those who otherwise would have no security, not to give an additional lien to a party who was amply secured before.

The sand and gravel must necessarily have been taken from the cars by the contractors' employees in barrows or other appliances and moved to the concrete mixer or mortar bed notwithstanding the cars were placed on the sidetrack near the building. Had the cars been sidetracked in the yards of the company the situation would have been logically the same; in that case the sand and gravel would have been unloaded in the yard by the contractors' employees and transported by wagon to the same mixer or mortar bed. The carriage of the material by the railway company would have been just as truly work and labor "in and about the erection or construction of the building" in the latter case as in the case before us. Such a construction of the statute would open a broad door for the enforcement of liens on buildings by common carriers for freight charges on building materials which are to be used in such buildings. We do not feel that it was intended that there should be any such open door. If we are wrong in our construction of the legislative intention, our error can be readily and easily corrected by the legislature itself.

*By the Court.*—Judgment affirmed.