(137 So. 36)
### CENTRAL OF GEORGIA RY. CO. v. UNITED STATES FIDELITY & GUARANTY CO. et al.
4 Div. 508.

Supreme Court of Alabama.
Oct. 15, 1931.

Steiner, Crum & Weil, of Montgomery, and Powell, Albritton & Albritton, of Andalusia, for appellant.

Coleman, Coleman, Spain & Stewart, of Birmingham, for appellees.

**BROWN, J.**

The appellant was permitted to intervene along with the Roquemore Gravel Company, in a suit filed by the Andalusia Manufacturing Company against R. S. Taylor, the contractor, and United States Fidelity & Guaranty Company, the surety on his bond given in pursuance of the provisions of section 28, subdivision (a), of the Act approved August 23, 1927, Acts of 1927, p. 356, known as "the Alabama Highway Code," for the faithful and prompt performance of the contract and all conditions and requirements thereof, in respect to project No. S–273, for the building of 3.30 miles of paved road in Covington county, and obligating the principal and surety to "promptly make payment to all persons supplying him or them with labor, material, feed-stuffs, or supplies, in the execution of the work provided for in such contract."

The trial resulted in a judgment in favor of the plaintiff, and the intervener Roquemore Gravel Company, and against the appellant, for the reason, as the judgment recites, that appellant's claim "is not a proper charge against the bond."

From the judgment against it, appellant on April 16, 1930, appealed. Thereafter the surety company, appellee in this case, on June 20, 1930, appealed from the judgment against it in favor of the Roquemore Gravel Company.

The suggestion in brief that this appeal should be dismissed, because the appellant did not join in the appeal taken by the surety company, is without merit for two reasons: (1) The appeal in this case was first in order, and no duty rested upon the appellant here to abandon its appeal and join in the later appeal; and (2) the, case was submitted on the merits without motion to dismiss, and, if any irregularity intervened, it was waived. Robinson v. Murphy, 69 Ala. 543; Lewis et al. v. Jenkins, 215 Ala. 680, 112 So. 205.

The suggestion that the transcript filed on this appeal should be stricken is also without merit. The transcript was substituted for the original by written agreement of the parties before the submission of the case.

The claim of the appellant in part is for freight incurred in carrying sand and gravel supplied by the Roquemore Gravel Company, consigned to the contractor, R. S. Taylor, and on cement shipped by the state highway department to said contractor, all of said materials being shipped for use by the contractor in the performance of the contract. And in part for demurrage on cars used in the shipment of said materials which the contractor failed or neglected to unload within the free time allowed for unloading by the established traffic regulations and the "average contract" in respect thereto, entered into by the carrier and the contractor, and as authorized by such regulations.

The evidence shows that said materials were received and receipted for by the contractor; that the freight and demurrage charges were made in the usual course, and at the authorized rate, and have not been paid.

The question of controlling importance, and the one ground on which the trial court apparently denied the appellant's claim, arises on the contention of appellees that the claim is not for "labor or material," and therefore is not within the purview of the statute and the obligation of the bond. On this question the decisions are not in agreement.

As has been stated in several of our cases. the Alabama statute is in the main the same as the federal law, and we have treated the federal decisions as highly pursuasive, if not controlling, in the construction of our statute. United States Fidelity & Guaranty Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622.

The reasoning of the cases holding nonliability is clearly stated in Mandel et al. v. United States, to Use of Wharton & N. R. Co.

et al., 4 F.(2d) 629, 631, decided by the Circuit Court of Appeals, Third Circuit, as follows: "The question therefore is: Was the claim of the railroad for freight and demurrage recoverable under the statutory bond, conditioned that the contractors 'shall promptly make payments to all persons supplying him or them labor and materials in the prosecution of the work provided for in such contract'? The court below allowed these items, but we cannot accede to this view. The words 'labor and material,' used by Congress in this statute, are plain words of well-understood meaning, and in the common use and acceptance car demurrage and car freight are not described or embraced by the words 'labor and material.' Moreover, there is no call for the exercise of judicial construction to give to demurrage and freight the protection of this statutory bond. There was a real hardship to labor and materialmen who worked upon, or furnished material for, a structure or improvement on government property. They could have no lien and no way of protecting themselves. Accordingly the statute required from the contractor a statutory bond and approved surety responsibility for the protection of unprotected labor and material. But the railroad required no such protection. It could refuse to deliver to the contractor until both freight and demurrage were paid. Hence neither the words of the bond allow, nor the spirit and purpose of the law require, that judicial construction to enlarge or construe the words 'labor and material' so as to include freight and demurrage. We agree with what was said by the Circuit Court of Appeals of the Fifth Circuit in United States v. Hyatt, 92 F. 445, 34 C. C. A. 447: 'Congress could not have intended to include in the term "labor," as used in this act, the freight charges of a railroad on materials carried by it. The railroad is abundantly protected by its lien on freight.' "

The following cases are to the same effect: American Surety Company v. Lawrenceville (C. C.) 110 F. 717–721; Wisconsin Brick Company v. National Surety Company, 164 Wis. 585, 160 N. W. 1044, L. R. A. 1917C, 912.

In Franzen v. Southern Surety Company, 35 Wyo. 15, 246 P. 30, 35, 46 A. L. R. 496, decided by the Wyoming Supreme Court, that court observed: "The rule as to cost of transportation is not yet as clear as might be wished. It has been held by some courts, which have had occasion to pass upon the point, that a railroad company will not have any claim under such bond, mainly for the reason that it has an independent lien which it may readily assert, and because it cannot be said that payment for such item was in contemplation of the parties when the bond was executed. United States use of Sabine & E. T. R. Co. v. Hyatt, 34 C. C. A. 445, 63 U. S. App. 767, 92 F. 442; Wisconsin Brick Co. v. National Surety Co., 164 Wis. 585, L. R. A.

1917C, 912, 160 N. W. 1044; Union Traction Co. v. Standard Brick Co. (Union Traction Co. v. Kansas Casualty & S. Co.) 112 Kan. 774, 30 A. L. R. 464, 213 P. 169. See, also, United States ex rel. McAllister v. Fidelity & D. Co., 86 App. Div. 475, 83 N. Y. S. 752. On the other hand, it is held that necessary cost of transportation for which no lien exists, or in cases where the lien is not usually asserted, or is impracticable to be asserted at time of transportation, may be recovered under such bond. Portland v. New England Casualty Co., 78 Or. 195, 152 P. 253; American Surety Co. v. Lawrenceville Cement Co. (C. C.) 110 F. 717; Title Guaranty & T. Co. v. Crane Co., 219 U. S. 24, 55 L. Ed. 72, 31 S. Ct. 140; Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 61 L. Ed. 1206, 37 S. Ct. 614. And, doubtless, where the party furnishing materials pays freight and haulage charges, such charges are a proper part of the cost of the material. Nye-Schneider-Fowler Co. v. Bridges, H. & Co. [98 Neb. 27, 151 N. W. 942], supra. And such items, if within the contract price, seem to be allowed even in the case of mechanic's liens. 27 Cyc. 44. See, also, note 43 L. R. A. (N. S.) 170, and note L. R. A. 1915F, 953."

And in United States Fidelity & Guaranty Co. v. Benson Hardware Co., supra, "A bond under the federal act also includes work done at the quarry, fifty miles away, and the labor of men who stripped the earth to get to the stone, and carpenters and blacksmiths who repaired the cars in which the stone was carried to the dock for shipment, and of stablemen who fed and drove the horses which moved the cars, United States Fid. & Guar. Co. v. U. S., 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; also amounts paid for the rental of cars, tracks, and other equipment used by the contractor, Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; also amounts paid for cartage and towage," etc. (222 Ala. 429, 132 So. 622, 626).

This court has held that claims for hauling material and transporting workmen by ferryboats are covered by the bond. Union Ind. Co. v. State, for Use of McQueen Smith Farming Co., 217 Ala. 35, 114 So. 415; Union Indemnity Co. v. State, for Use of Armstrong, 218 Ala. 132, 118 So. 148.

In the City of Stuart, for Use and Benefit of Florida East Coast Ry. Co. v. American Surety Co. of New York, 38 F.(2d) 193, 194, 195, involving a claim for freight and demurrage, decided by the United States Circuit Court of Appeals, Fifth Circuit, the claim was sustained. The reasoning in that case seems to us unanswerable. To quote from the opinion:

"The precise point here presented has not been ruled on by the Florida Supreme Court, but that court recognizes that the Florida statute is an adoption of the statute of the

United States on the subject, 40 U. S. Code, § 270 (40 USCA § 270), and that the authoritative construction of the latter prior to the enactment of the former was adopted with the statute, and that federal rulings since are highly persuasive as to the meaning of the Florida statute. Kidd v. Jacksonville, 97 Fla. 297, 120 So. 556. The federal decisions herein relied on were reviewed with approval by the Florida Court in Fulghum v. State of Florida, 92 Fla. 662, 109 So. 644. The particular words for construction in the Florida statute are those which require the contractor for public work to execute a bond 'with the additional obligation that such contractor, or contractors, shall promptly make payments to all persons supplying him, or them, labor, material and supplies, used directly or indirectly by the said contractor * * * or sub-contractors in the prosecution of the work provided for in said contract.' Laws 1925, c. 10035. The early constructions of the similar words of the federal statute were rather strict; this court in 1899, in United States v. Hyatt (C. C. A.) 92 F. 442, concluding that the services of a railroad were not 'labor.' This decision has been followed so recently as Mandel v. United States (C. C. A.) 4 F.(2d) 629.

"Besides the narrow meaning given the word 'labor,' the main reasons advanced for the holding are that the common carrier has a lien, and does not need protection by a bond, and that on delivering the goods without payment he destroys the lien, and prejudices the surety in his right of subrogation. As to the first reason, we find in the statute no reference to liens. Protection is expressly extended to all persons who furnish the named things, whether under lien or not, whether individual or corporation, rich or poor, supplying in person or through agents and representatives. As to the last see Fulghum v. Florida, 92 Fla. 662, 109 So. 644. A railroad company is not excluded. In point of fact, many persons who have a lien enforceable by retention have been held to be within the statute. Nor is the nature of the work done in transportation such as to prevent its being labor. Much of what is done by the agents of the railroad company is hard labor, and the doing of the work, even by the use of machines, is recognized as labor under the statute. Fulghum v. Florida, 92 Fla. 662, 109 So. 644. Transportation of materials by cart and towboat is uniformly allowed as labor. United States Fidelity & Guaranty Co. v. United States, 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Title Guaranty & Trust Co. v. Crane Co., 219 U. S. at page 34, 31 S. Ct. 140, 55 L. Ed. 72. In what way can the distance of the transportation or the fact that it is over a specially prepared rail track make it any the less labor? It was held in Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206, that, where track and cars and equipment were rented by the contractor, and used by him in transportation for the job, the rental was protected by the bond. If he should charter a railroad or a train, the railroad company could, under this decision, recover. Why not when it furnishes single cars? By all the cases, when a furnisher of material pays the freight, whether bound to do so or because the contractor does not pay, the freight is added to the cost of the material, and protected. See Maryland Casualty Co. v. Ohio River Gravel Co. (C. C. A.) 20 F.(2d) 514. The same 'place value' is given the material by the transportation, no matter who pays the freight, and to the same extent is material furnished.

"The decisions of the Supreme Court reject the theory of strict construction, and adopt that of liberal construction in the allowance of claims above alluded to. Illinois Surety Co. v. John Davis Co., 244 U. S. 376, 37 S. Ct. 614, 61 L. Ed. 1206; United States Fidelity & Guaranty Co. v. United States, 231 U. S. 237, 34 S. Ct. 88, 58 L. Ed. 200; Brogan v. National Surety Co., 246 U. S. 257, 38 S. Ct. 250, 62 L. Ed. 703, L. R. A. 1918D, 776. So do the above-cited Florida decisions. In addition to protecting the honest claims of persons who have contributed to the performance of the job, the legislative intent no doubt was also to minimize impediment and delay of the work, and facilitate procurement of labor and materials, through the security afforded by the bond. If the carrier is included in its benefits, this intent will be served. If he is not included, he must hold the freight until payment is made, and sell it for charges if it is not, to the embarrassment of the work.

"The entire subject is well analyzed, and the authorities reviewed, in the very recent case of State of Delaware v. Aetna Casualty & Surety Co. (Del. Sup.) 145 A. 172. The claim that the surety is unjustly prejudiced by the surrendering of the carrier's lien is there fully examined and exploded. Additionally it may be remarked that the carrier's lien could not be of advantage to the surety by way of subrogation. If by payment he can be subrogated, he could enforce it only against the materials transported, thus keeping them out of the job. Yet the first and most important obligation of the bond is that the material shall be furnished, and the work done, according to the contract. If the materials whose transportation is not paid for are sold, either by the carrier or the surety, in order to satisfy the charges on them, the surety would still be bound to see that they were replaced by other material whose transportation would again have to be paid for. The broad obligation, assumed in the bond, that the contract shall be completed, results in all liens for labor and material being practically unimportant to the surety, except to see that they do not prevent the execution of the work."

A like result was reached in State of Delaware v. Aetna Casualty & Surety Co. (Del. Sup.) 145 A. 172. The court in that case, answering the argument that the carrier is protected by its common-law lien, observed:

"The argument that it would be inequitable to allow a carrier to surrender the lien and collect from the surety does not appeal to us. What is a carrier's lien? It is simply the right to hold the consignee's cargo until payment is made for the work of transporting it. In simple terms it is the right to withhold the enjoyment by another of the fruits of work done in his behalf until he pays therefor. The carrier is authorized by the law of liens to say in substance what an ordinary laborer or vendor of goods is in position to say, viz., pay me for my labor in advance or for my goods before delivery, otherwise you shall not enjoy the benefits of the one or possess the other. The carrier, notwithstanding the cargo is the consignee's, can similarly say—before I complete the labor of transportation by delivery to you, pay me for my work. That is all the lien is. It does not follow the goods when delivered, nor can the consignee be compelled to pay until they are delivered. Now what reason can there be in holding that a laborer or a materialman may deliver his labor or materials on credit and go against the surety in case of nonpayment, but a transporter if he surrenders the cargo may not? If he may not, then this is the result, the very act of surrendering the cargo which will give rise to the debt, will relieve the surety company of its guaranty of payment, and carriers when they are afraid to extend credit to the contractor will therefore hold back the materials and obstruct the work, a result which must be inharmonious with the statute's purpose.

"The thought which underlies the supposed equity in favor of the surety is this—that it has a right of subrogation which it ought not be deprived of. It seems to be a sufficient answer to this thought to say, that if the contention we are criticizing be sound, there never could arise any right of subrogation. The right, if it exists, could not possibly arise until delivery had been effected and the freight paid by the surety. Yet the moment delivery has been made, the lien is gone. The carrier having no lien, what is there the surety can be subrogated to? And if delivery is withheld and the lien retained, the carrier has no claim for its discharge against the principal and hence there is nothing to which the surety can be subrogated. Whether delivery is made or not, therefore, there is no opportunity for a right of subrogation to arise. It would seem then that the situation is entirely different from that which prevails where the creditor has a continuing lien against a debtor's property, and after waiving the lien seeks to compel the debtor's surety to pay the debt." 145 A. 176, 177.

Union Indemnity Co. v. State, for Use of Armstrong, 218 Ala. 132, 118 So. 148, where claim for repairs on a hoisting engine leased by the contractor, and freight thereon incurred in shipping it to the owner for repairs was denied, is cited by appellee as sustaining the theory of nonliability for freight. The consideration underlying the denial of that claim was that the duty rested on the lessor, the owner, to keep the machine in repair, and for such expense he was compensated by the rent paid by the contractor.

■ The opinion here is, on the cases last above cited, that claim for freight and demurrage arising from the carriage of material for the work covered by the contract is chargeable against the bond, and this for the reason that such material is not available for the work unless it is carried to the place of the work, and its carriage is as much a part of the cost of the material as any other item of labor necessary to collect and prepare it for the work.

■ Another contention of appellees is that there is an absence of evidence going to show that there was any contract between the railroad company and the contractor to haul for any particular job, and that the cars involved in the claim carried everything shipped to the contractor who was then engaged in work on three different projects or jobs, and the materials were suitable for use in either or all of said projects. The answer to this contention is that the evidence is clear to the point that the sand and gravel shipped by Roquemore Gravel Company and the cement shipped by the state highway department were for use in project S–273; that the materials were delivered to the contractor and he receipted therefor. This made a prima facie case for the appellant-intervener. U. S. F. & G. Co. v. Benson Hardware Co., 222 Ala. 429, 132 So. 622; U. S. F. & G. Co. v. Andalusia Mfg. Co., 222 Ala. 637, 134 So. 18.

The contention of appellees, that the suit is barred by the sixty-day statute, Acts 1927, p. 356, § 28(e), was considered and determined against appellee in U. S. F. & G. Co. v. Andalusia Mfg. Co. et al., supra.

The result is that the court erred in denying the appellant a judgment, and for this error the judgment of the circuit court is reversed and the cause is remanded for further proceedings in accordance with this opinion.

Reversed and remanded.

ANDERSON, C. J., and THOMAS and FOSTER, JJ., concur.